UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADEL TAWFILIS, DDS d/b/a CARMEL VALLEY CENTER FOR ORAL AND MAXILLOFACIAL SURGERY and HAMID A. TOWHIDIAN, M.D., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ALLERGAN, INC.,<br><br>Defendant. | CASE NO. 8:15-cv-00307-JLS-JCG<br><br>**ORDER RE: SUPPLEMENTAL BRIEFING ON PARTIES' CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT (Docs. 280, 308-1)** |

1

1    Before the Court are the Parties' Cross Motions for Partial Summary Judgment.
2 (Pl. MSJ, Doc. 308-1; Def. MSJ, Doc. 280.)  After full briefing, the Court held a hearing
3 on the Motions.  The Court now orders further briefing.
4    Both parties move for summary judgment on, among other grounds, the issue of
5 causation, i.e., whether Allergan's alleged anticompetitive conduct caused Plaintiffs'
6 injuries.  (Pl. MSJ at 21; Def. MSJ at 1–2.)  Specifically, Plaintiffs argue that in the
7 absence of the exclusive licensing agreement between Medytox and Allergan, there is a
8 reasonable probability that Medytox would have brought MT-10109L to the United States'
9 neurotoxin market by mid-2015.  (Hearing Transcript 34:16–23, Doc. 360.)  Plaintiffs'
10 expert Dr. John Geigert posits that FDA approval for MT-10109L could reasonably have
11 been achieved by mid-2015 if Medytox had been able to pursue a more efficient strategy
12 for manufacturing clinical and commercial products.  (Id. 32:19–33:19.)  According to
13 Plaintiffs, Medytox would have pursued this more efficient strategy because it had both the
14 intention and the financial incentives to bring MT-10109L to the U.S. as quickly as
15 possible.  (Id. 38:5–7.)  However, Medytox was unable to pursue its preferred strategy in
16 accordance with Dr. Geigert's timeline because the agreement allocates responsibility for
17 navigating the FDA approval process exclusively to Allergan.  (Id. 38:5–17.)  Thus,
18 Plaintiffs conclude that, but for the agreement, there is a reasonable probability that
19 Medytox would have achieved FDA approval and commercialized MT-10109L by mid-
20 2015.  (Id. 38:9–17.)
21    Allergan argues that there is no reasonable probability that Medytox could have
22 brought MT-10109L to the U.S. market by mid-2015 irrespective of the agreement.  (Id.
23 7:20–25.)  Although the agreement allocates responsibility for the FDA approval process
24 to Allergan, Medytox is solely responsible for the development of clinical and commercial
25 products.  (Id. 15:1–20.)  Allergan agrees with Plaintiffs that Medytox has significant
26 financial incentives to get MT-10109L to market as fast as possible, but to date Medytox
27 has been unable to resolve drug product and manufacturing compliance issues that would
28 prevent or delay FDA approval.  (Id. 9:11–10:11.)  Medytox had produced neither a

clinically nor commercially FDA-approvable product at the time that the agreement was signed, and it is still not able to produce one today. (Id. 7:11–25.) Thus, Allergan concludes that regardless of its control over navigating the FDA approval process, it is not reasonably probable that Medytox could have brought MT-10109L to market by mid-2015 because Medytox is not able to produce an approvable product. (Id. 12:10–23.)

In short, causation is a central issue in this case, and the Court has determined that a more focused evidentiary presentation would assist the Court in ruling on the parties' Motions. (Id. 3:1–20.) Therefore, the Court orders supplemental briefing from each party as follows.

Plaintiffs should present an evidence-supported graphic timeline that identifies every step that Medytox would had to have taken from the time of the agreement[1] in order to successfully bring MT-10109L to market by mid-2015. These steps may include, *but are not limited to*: (1) ensuring facility compliance for the production of clinical materials; (2) producing clinical materials; (3) carrying out clinical testing; (4) completing construction of its commercial production facilities; (5) performing necessary bridging studies between facilities; (6) preparing and submitting the necessary application materials to the FDA; (7) waiting for the FDA to review and respond to those materials; and (8) creating an operative U.S.-based sales force. The timeline should also provide an estimate of the time that each step would have required for completion. Plaintiffs should cite to evidence in the record that identifies each necessary step and the amount of time that each step is purported to require. To the extent possible, Plaintiffs should assign a probability, up to and including a percentage likelihood, that each step would successfully occur within the time allotted in the timeline.

Allergan should present a similar graphic timeline that identifies evidence in the record showing that there is no genuine issue of material fact that there was a reasonable

---

[1] Plaintiffs argue that Allergan and Medytox reached an agreement before the contract was actually signed in September 2013. For purposes of this briefing, Plaintiffs may begin their timeline on the date that they believe agreement was reached.

probability of MT-10109L coming to market by mid-2015.  Because Plaintiffs persuasively argue that the timing for certain steps and milestones were within the control of Allergan, Allergan should focus on elements necessary to FDA approval that were independent of Allergan's strategic decisions and outside of Allergan's control.

The Court recognizes that this kind of briefing is unusual, and if the parties are unclear as to any aspect, they should meet and confer and submit a joint request for clarification to the Court.  The parties should file their supplemental timelines within **twenty one (21) days** of entry of this order.  Each party may respond to the other side's timeline via a sur-reply of no more than five pages, which is due **seven (7) days** thereafter.  Upon receipt of the supplemental briefing, or when the time has expired for filing such briefs, the matter shall be deemed under submission.

DATED:  November 21, 2017

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE