Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4660 La Jolla Village Drive, Suite 200
San Diego, CA 92122
Tel:    (858) 546-4435
Fax:    (858) 430-3719
E-mail: rak@katriellaw.com

Ralph B. Kalfayan (133464)
**KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
E-mail:rkalfayan@kkbs-law.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADEL TAWFILIS, D.D.S. D/B/A CARMEL VALLEY CENTER FOR ORAL AND MAXILLOFACIAL SURGERY AND HAMID A. TOWHIDIAN, M.D., On Behalf Of Themselves And All Others Similarly Situated,**<br><br>            **Plaintiffs,**<br><br>        **vs.**<br><br>**ALLERGAN, INC.**<br><br>            **Defendant.** | **Case No.  8:15-cv-00307-JLS**<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Judge: Hon. Josephine L. Staton**<br>**Courtroom: 10A, 10th Floor**<br>**Hearing Date:  March 9, 2018**<br>**Hearing Time: 2:30 p.m.** |

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND  MOTION……………………………………...…………1

MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT……..……..1

I.     INTRODUCTION AND SUMMARY OF MOTION……………………………..1

II.     PRELIMINARY APPROVAL SHOULD BE GRANTED………………………4

     A.     The Previously Certified Classes Should Remain Certified As
         Settlement Classes……………………………………………………………4

     B.     The Notice Plan Should Be Approved……………………...…………5

     C.     The Substantive Terms Of The Settlement Are Fair And Merit
         Preliminary Approval…………………………………………………………6

          1.   The Vigorously Disputed Strength Of Plaintiffs' Case
              Supports The Reasonableness Of This Proposed Settlement…..……11

          2.   The Risk, Expense, Complexity, And Likely Duration Of
              Further Litigation All Support Preliminary Approval Of
              The Class-wide Settlement………………………………...……..12

          3.   The Risk Of Maintaining Class Action Status Throughout
              Trial And Appeal Also Supports Preliminary Approval…...………14

          4.   The Amount Offered In Settlement Is Reasonable And
              Supports Preliminary Approval……………...………………..15

          5.   The Advanced Stage Of The Proceedings Supports
              Preliminary Approval……………………………...……………16

          6.   The Experience And Views Of Counsel Favor
              Preliminary Approval……………………………...……………16

CONCLUSION……………………………………………………………17

# TABLE OF AUTHORITIES

**Cases:**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007)…………………………………………………10-11

*Alberto v. GMRI, Inc.*,
252 F.R.D. 652 (E.D. Cal. 2008)……………………………………………………..10

*American Apparel, Inc. v. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)…………………………….......…..16-17

*Castro v. Zenith Acquisition Corp.*,
2007 WL 81905 (N.D. Cal.  Jan. 9, 2007)………………………………………………6

*Class Plaintiffs v. Seattle*,
955 F.2d 1268 (9th Cir. 1992)………………………………………………………7

*Corson v. Toyota Motor Sales U.S.A., Inc.*,
2016 WL 1375838 (C.D. Cal. Apr. 4, 2016)………………………………………….6

*Dennis v. Kellog Co.*,
697 F.3d 858 (9th Cir. 2012)………………………………………………………..8

*Ferrington v. McAfee, Inc.*,
2012 U.S. Dist. LEXIS 49160 (N.D. Cal. Apr. 6, 2012)…………………………………8

*Forcellati v. Highland's, Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)………………………………………….8

*Gattreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982)………………………………………………………7

*In re Asacol Antitrust Litig.*,
No. 15-cv-12730-DJC (D. Mass Dec. 7, 2017)…………………………….....………15

*In re Asacol Antitrust Litig.*,
No. 17-8038 (1st Cir. Jan. 17, 2018)…………………………………….…………..14

*In re Asacol Antitrust Litig.*,
No. 18-1065 (1st Cir. Jan. 25, 2018)…………………………………….…………..14

*In re Mercury Interactive Corp. Securities Litig.*,
618 F.3d 988 (9th Cir. 2010)…………………………………………….…………3

*In re NVIDIA Corp. Derivative Litig.*,
2009 U.S. Dist. LEXIS 24973 (N.D. Cal. Mar. 18, 2009)……………………….………7

*In re Tableware Antitrust Litig.*,
484 F. Supp.2d 1078 (N.D. Cal. 2007)……………………………...….…………10, 11

*Jaffe v. Morgan Stanley & Co., Inc.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008)………………………………….……..2

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)…………………………………....…………12, 16

*McMahon v. Tuesday Morning, Inc.*,
No. 14-cv-05547-EMC, (N.D. Cal. Feb. 23, 2017)………………………………..9

*McPhail v. First Command Fin. Planning, Inc.*,
2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009)……………………….9

*Mullane v. Central Hanover Trust*,
339 U.S. 306 (1950)………………………………………………….……..5

*Munday v. Federal Navy Credit Union*, 2016 WL 7655807
(C.D. Cal. Sept. 15, 2016)…………………………………….………10, 12-13

*Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*,
No. 2:12-cv-03824 (E.D. Pa. Sept. 15, 2014)……………………………...………10

*Nichols v. SmithKline Beecham Corp.*,
2005 WL 950616 (E.D. Pa. Apr. 22, 2005)…………………………….………9

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982)…………………………………...…….6-7

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)…………………………………………….…………11

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9ᵗʰ Cir. 2006)……………………………………………...……………..10

*Scott v. HSS Inc.*,
2017 WL 7049524 (C.D. Cal. Dec. 18, 2017)……………………………………………9

*Staton v. Boeing Co.*,
327 F.3d 938 (9ᵗʰ Cir. 2003)……………………………………………………………14

*Tawfilis v. Allergan, Inc.*,
157 F. Supp.3d 853 (C.D. Cal. 2016)……………………………………..……………13

*Tawfilis v. Allergan, Inc.*,
2016 WL 6156197 (C.D. Cal. Aug. 11, 2016)………………………………………….13

*Torrisi v. Tucson Elec. Power*,
8 F.3d 1370 (9th Cir. 1993)……………………………………………………………..6

*Van Bronkhorst v. Safeco Corp.*,
529 F.2d 943 (9th Cir. 1976)……………………………………………..……………..6

*Wade v. Defender Security Co.*,
No. 2:15-cv-7142-CAS-JC (C.D. Cal. May 23, 2016)…………………………..……...9

*Wannemacher v. Carrington Mortgage Srvcs., LLC*,
2014 WL 12586117 (C.D. Cal. Dec. 22, 2014)……………………………….……..…6

*Weinberger v. Kendrick*,
698 F.2d 61 (2d Cir. 1982)……………………………………………...……………11

**Rules:**

Fed. R. Civ. P. 23……………………………………………….…….passim

**NOTICE OF MOTION AND MOTION**

To Defendant, its counsel of record, and any other interested parties:

PLEASE TAKE NOTICE THAT on March 2, 2018, at 2:30 p.m., at Courtroom 10A of the United States District Court for the Central District of California, Santa Ana Division, in Santa Ana, California, or at such other time or place as this Court may Order, pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs Adel Tawfilis, D.D.S. d/b/a Carmel Valley Center For Oral And Maxillofacial Surgery and Hamid A. Towhidian, M.D. (collectively "Plaintiffs"), by and through their undersigned counsel, will and do hereby move this Court in unopposed fashion for an Order granting Preliminary Approval to the class-wide Proposed Settlement reached in this matter.  A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Roy A. Katriel being filed herewith.

This unopposed motion is based on the accompanying Memorandum in Support, the Declaration of Roy A. Katriel, including the Settlement Agreement which is attached thereto, any argument of counsel, and such additional material as this Court may consider.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**I.      INTRODUCTION AND SUMMARY OF MOTION**

Plaintiffs and their counsel are pleased to report that, following an in-person mediation session before the Honorable Edward A. Infante (Ret.), and subsequent extensive follow-up telephonic discussions on numerous occasions over the months since that mediation, the parties to the above-entitled action have reached a proposed class-wide settlement to resolve the claims asserted in the operative First Amended Class Action Complaint ("FAC") filed in this action.  A copy of the parties' Settlement

Agreement is attached as Exhibit 1 to the Declaration of Roy A. Katriel in Support of Plaintiffs' Unopposed Motion for Preliminary Approval Of Class Action Settlement ("Katriel Decl.").

Plaintiffs now file this unopposed motion for preliminary approval, so that: notice of the proposed settlement can be disseminated to the absent class members; the absent class members can be given an opportunity to avail themselves of the settlement, opt-out of the Settlement Class, or file any objections to the proposed settlement; and, this action and all other proceedings involving the subject-matter encompassed by this class action and Settlement Agreement can be stayed pending the Court's determination as to whether to grant Final Approval to the proposed settlement.  *See* Fed. R. Civ. P. 23(e)(1) (directing that any notice of class action settlement may only be disseminated with prior court approval); *see also Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *11 (N.D. Cal. Feb. 7, 2008) (once a court grants preliminary approval it is proper to stay and enjoin members of settlement class from litigating matters covered by the proposed settlement before this or other courts).

This unopposed motion for preliminary approval also seeks to set a date for the Final Approval and Fairness Hearing on the proposed settlement.  *See* Settlement Agreement, at ¶¶ 1, 2.  At the Final Approval Hearing, the Court will have the opportunity to, *inter alia*, determine whether to grant final approval to the class action settlement, as well as to evaluate any objections to the settlement that may have been filed.  *See* Fed. R. Civ. P. 23(e)(2) (directing that class action settlement that purports to bind absent class members may only be entered after hearing held by the court).

Preliminary approval should be granted.  The settlement reached is unquestionably fair.  It provides members of the damages class—the same class that the Court already has certified—compensation for the alleged overcharge that the class members sustained in making their purchases of Botox® Cosmetic directly from Allergan.  To accomplish this, the Settlement Agreement directs Allergan to establish a $13,450,000.00 non-reversionary settlement common fund.  *See* Settlement Agreement, at ¶ 5.  Notably, if the

2

settlement becomes effective, compensation to the settlement class members *will occur automatically without the need for the filing of any claim forms.*  That is, because Allergan has records of all its Botox® Cosmetic customers that include the identity of such customers as well as their volume of purchases during the damages Class Period, the Settlement Agreement calls for payments from the settlement fund to be made to these class members following the settlement's effective date, without the need for any class member to file a claim form, proof or purchase, or any other submission.  *Id.*, at ¶ 9(b). In this fashion, the settlement seeks to ensure that the settlement fund efficiently compensates the class members for whose benefit the Settlement Agreement has been negotiated.  The amount of payment made to each settlement class member will depend on the volume of Botox® Cosmetic that the class member purchased during the damages Class Period.  *Id.*, at ¶ 9(c) (detailing plan of allocation).

In addition to the foregoing direct substantive relief, the Settlement Agreement provides that the common settlement fund be used to pay the costs of implementing the settlement, as approved by the Court, including the costs of notice and settlement claims administration.  Further, in keeping with the terms of Section 4 of the Clayton Act's fee shifting provision, the settlement permits Class Counsel to seek an award of attorneys' fees and reimbursement of litigation costs, though the outcome of that request will not affect the settlement becoming effective.  *Id.*, at ¶ 10.[1]

By any objective standard, the settlement warrants preliminary approval.  The $13.45 million amount of settlement consideration strikes the appropriate balance between, on the one hand, fairly compensating class members for their claims and, on the other hand, accounting for the real and uncertain risks of continued litigation that may leave class members with no remedy.  The particular litigation risks and uncertainties are

---

[1] Consistent with Ninth Circuit precedent, Class Counsel will file their motion for attorneys' fees and reimbursement of costs before the deadline for filing any objections, and that motion will be publicly posted on the settlement website.  *See In re Mercury Interactive Corp. Securities Litig.*, 618 F.3d  988, 994  95 (9th Cir. 2010) (interpreting Fed. R. Civ. P. 23(h) to require that class counsel's motion for attorneys' fees be publicly filed sufficiently in advance of any objection deadline).

detailed more fully below and will be further briefed in any motion for final approval of the settlement.  Class Counsel, who have litigated this action since its inception nearly three years ago, have overseen the review of nearly a million pages' worth of written discovery, and have attended over two dozen depositions across the globe, are of the considered view that this settlement fairly and adequately advances class members' interests.  *See* Katriel Decl., at ¶¶ 3-11, 16.

For all the foregoing reasons, as more fully detailed below, Plaintiffs' Unopposed Motion for Preliminary Approval should be granted.

## II.   PRELIMINARY APPROVAL SHOULD BE GRANTED.

### A.   The Previously Certified Classes Should Remain Certified As Settlement Classes.

On June 26, 2017, the Court entered its Order granting Plaintiffs' motion for class certification.  See Dkt. No. 263.  The Order certified damages and injunctive relief class defined as:

> All purchasers within the United States who purchased Botox Cosmetic directly from Defendant Allergan, Inc. during the Class Period for a price that was based on Allergan's list price.  Excluded from the class definition are all judicial officers assigned to this case, as well as their staff and immediate relatives.  The class definition also excludes all employees, agents, or officers of Defendant Allergan, Inc., and all federal, state, and local government employees.

*Id.*, at 29:19  25[2].

In certifying the foregoing classes, the Court found that Plaintiffs met the Rule 23(a) and 23(b)(3) criteria for class certification.  *See id.*, at 14:21  29:7 (finding Rule 23(a) and 23(b)(3) requirements met).  The Settlement Agreement adopts this class definition, and seeks to resolve this matter on behalf of members of this certified class

---

[2] The certified damages and injunctive relief classes are identically defined.  The Class Period for the damages class is April 1, 2015 through June 26, 2017, while the Class Period for the injunctive class is September 25, 2013 through June 26, 2017.  *See* Dkt. No. 263 [Class Certification Order], at 4:1  3.

1   definition.  *See* Settlement Agreement, at p.1.  Because no intervening event or
2   circumstance has arisen since the Court's prior grant of class certification, the certified
3   classes should remain in effect as settlement classes for purposes of this motion for
4   preliminary approval of the parties' class-wide settlement.

   **B.    The Notice Plan Should Be Approved.**
5
6       Rule 23 and due process require that notice be provided to absent class members in
   order to inform them of the proposed settlement, and grant them the opportunity to opt-
7   out or object.  *See* Fed. R. Civ. P. 23(c)(2).  The notice and means of disseminating it
8   must be the "best notice practicable" under the circumstances.  *See Mullane v. Central*
9   *Hanover Trust*, 339 U.S. 306, 314 (1950).
10
11      The Court previously considered the means and content of the notice to be
   disseminated to absent class members in the context of the adversarial class certification
12  Order.  By separate Order, the Court approved the parties' prior joint proposal to
13  disseminate notice of the class certification decision to the absent class members.  *See*
14  Dkt. No. 271.  That approved proposal entailed direct mailed notice to all Allergan
15  Botox® Cosmetic customers of record who formed part of the class definition, as well as
16  a separate notice by online publication administered by the Claims Administrator. *Id.*, at ¶
17  2.
18
19      The Settlement Agreement adheres to that already-approved notice methodology
   by calling for the same notice procedure to be implemented with respect to the proposed
20  class-wide settlement.  *See* Settlement Agreement, at p.2, ¶ 9(b).[3]  Further, the content of
21  the notice (both the Long Form Notice and the Short Form Notice forms) is
22  unquestionably fair.  These forms, attached hereto as Exhibits 2 and 3 to the Katriel
23  Declaration, inform class members about the existence and key terms of the proposed
24  class-wide settlement, and advise class members as to their options to partake in the
25

26  _____
27  [3] For the sake of efficiency, Class Counsel intends on retaining KCC as the Settlement
   Claims Administrator—the same entity that administered the notice of the class
28  certification notice.  *See* Katriel Decl., at ¶ 14.

                                        5

settlement, opt-out of the settlement class, or object to the proposed settlement.  *See* Exs. 2 and 3 to Katriel Decl. (proposed Long Form and Short Form Settlement Notices). Such notice content comports with due process and Rule 23 requirements.  *See Corson v. Toyota Motor Sales U.S.A., Inc.*, 2016 WL 1375838, at *2 (C.D. Cal. Apr. 4, 2016) (approving same form of notice whereby the Settlement Administrator "would deliver a Short Form Notice to each class member by U.S. Mail . . . . KCC would also establish a website containing, among other things, the terms of the Settlement Agreement and all related documents, including a Long Form Notice and claim forms.  Finally, KCC would set up a toll-free telephone number that would provide settlement-related information to class members."); *Wannemacher v. Carrington Mortgage Srvcs.*, LLC, 2014 WL 12586117, at *3 (C.D. Cal. Dec. 22, 2014) (approving same mechanism of disseminating short-form and long-form of class notice).

### C.    The Substantive Terms Of The Settlement Are Fair And Merit Preliminary Approval.

Preliminary approval should also be granted to the settlement because its terms are fair and reasonable.  Ultimately, the decision whether to grant preliminary approval to a settlement of a class action is a matter left to the discretion of the trial court.  *See Castro v. Zenith Acquisition Corp.*, 2007 WL 81905, at *1 (N.D. Cal.  Jan. 9, 2007).  In exercising that discretion, the Court should bear in mind that "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). Recognizing that a settlement represents an exercise of judgment by the negotiating parties, *Torrisi v. Tucson Elec. Power*, 8 F.3d 1370, 1375 (9th Cir. 1993), the Ninth Circuit has held that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The general standard by which courts are guided when deciding whether to grant preliminary approval to a class action settlement is whether the proposed settlement falls within the range of what could be "fair, adequate, and reasonable," so that notice may be given to the proposed class, and a hearing for final approval may be scheduled. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also Gattreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (If the court finds that the proposed settlement is "within the range of possible approval" and that notice should be given, "the next step is the fairness hearing."). An evaluation of the benefits under any proposed settlement "must also be tempered by the recognition that any compromise involves concessions on the part of all the settling parties. Indeed, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *In re NVIDIA Corp. Derivative Litig.*, 2009 U.S. Dist. LEXIS 24973, at *16 (N.D. Cal. Mar. 18, 2009) (*quoting Officers for Justice*, 688 F.2d at 624).

This proposed settlement assuredly satisfies the foregoing criteria. The terms of the settlement provide class members with meaningful relief that addresses the precise legal injury (a claimed antitrust overcharge) that was alleged in the FAC.

Unlike notorious class settlements that release class member claims for mere pennies on the dollar, here the recovery offered is real, substantial, and crafted in a manner to ensure that the settlement consideration actually reaches its intended beneficiaries. Each qualifying member of the damages settlement class (the only class members who would have been entitled to obtain any monetary recovery after a successful trial judgment) will be provided payment from the $13.45 million settlement common fund. *See* Settlement Agreement, at ¶ 9(b). That payment, moreover, will be mailed to each such class member automatically upon the settlement becoming effective, *without the need for any class member to make a claim, file any forms, or undertake any*

*other settlement efforts.*  Because the records of the class members and their Botox®
Cosmetic purchase history is ascertainable by review of Allergan's records, the
Settlement Agreement provides that settlement payment checks be mailed to the eligible
settlement class members without the need for any further action or claim submission by
the class member.  *Id.*

This Settlement Agreement therefore envisions that the entirety of the settlement
common fund, after accounting for any award of fees and costs approved by the Court,
will be disbursed to the members of the damages settlement class.[4]  In such manner, this
proposed settlement is notable and distinct from many class-wide settlements that purport
to offer an inflated settlement consideration amount, but make recovery by the actual
class members dependent upon the submission of claim forms that, in reality, relatively
few settlement class members submit.  *See Forcellati v. Highland's, Inc.*, 2014 WL
1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("The reality is the number of class members
who actually file claims is relatively low. '[T]he prevailing rule of thumb with respect to
consumer class actions is [a claims rate of] 3–5 percent.'"(quoting *Ferrington v. McAfee,
Inc.,* 2012 U.S. Dist. LEXIS 49160, at * 13, 2012 WL 1156399 (N.D. Cal. Apr. 6, 2012)).

The settlement amount paid to each individual class member is a function of the
amount of Botox® Cosmetic vials that the class member purchased directly from Allergan
during the damages Class Period.  *See* Settlement Agreement, at ¶ 9(c) (plan of
allocation).  That is, the settlement common fund, net of any awarded fees and costs, is to
be distributed on a pro rata basis to class members based on the number of Botox®

---

[4] Even though the entirety of the settlement fund, net of awarded fees and costs, will be
disbursed to settlement class members without the need for claim form submission, the
Settlement Agreement provides for the contingency that some number of mailed
settlement checks may remain uncashed following their expiration period.  In such a
circumstance, the Settlement Agreement calls for any such uncashed funds to be
distributed to *cy pres* recipients selected from the designated list provided at Exhibit 4 to
the Katriel Declaration.  These potential *cy pres* recipients all are charitable
organizations devoted to addressing facial or skin medical conditions, and thereby would
meet the requisite nexus to the subject-matter of this litigation if such a *cy pres*
distribution of uncashed funds were required.  *See Dennis v. Kellog Co.*, 697 F.3d 858,
865 (9th Cir. 2012) ("[W]e require that there be "a driving nexus between the plaintiff
class and the *cy pres* beneficiaries.").

Cosmetic vials purchased by each class member during the damages Class Period.  To account for the fact that Botox® Cosmetic is sold in both 50 and 100 unit vial sizes, the Settlement Agreement calls for an arithmetic normalizing equation by which any 50 unit vial shall be counted as 0.55 times the 100 unit vial of Botox Cosmetic.  *Id.*, at ¶ 9(c). This ratio is derived from the Allergan list prices for the various Botox® Cosmetic vial sizes.  *Id.*, at n.3.

The Settlement Agreement's consideration is fair and reasonable.  To be fair, a settlement need not reimburse class members for all their claimed damages, or even a majority of that amount.  This is because the very nature of a compromise that takes into account the risks of continued litigation makes the offering of even vastly reduced consideration in compromise of the disputed claims perfectly proper.  Here, the $13.45 million in settlement consideration amounts to approximately 8.36 percent of the overcharge damages calculated by Plaintiffs' expert economist using U.S price forecast methodology.  *See* Expert Merits Report of Russell W. Mangum III, Ph.D., at ¶ 115.  This falls above or within the range of settlement consideration amounts approved by this and other courts, particularly in light of the contentious and uncertain outcome of this complex antitrust action.  *See, e.g., Scott v. HSS Inc.*, 2017 WL 7049524, at *6 (C.D. Cal. Dec. 18, 2017) (Staton, J.,) (approving as fair class action settlement that provided settlement consideration amounting to 3.9 percent of recoverable damages at trial); *McMahon v. Tuesday Morning, Inc.*, 14-cv-05547-EMC, ECF No. 82 at 2:2– 10 (N.D. Cal. Feb. 23, 2017) (approving settlement amount that was 4.75% of estimated potential liability); *Wade v. Defender Security Co.*, 2:15-cv-7142-CAS-JC, ECF No. 25-1 at 1:9–17, 21:20–26, ECF No. 28 (C.D. Cal. May 23, 2016) (approving settlement amount that was 6.77% of potential maximum liability); *McPhail v. First Command Fin. Planning, Inc.*, 2009 U.S. Dist. LEXIS 26544, at *21  22 (S.D. Cal. Mar. 30, 2009) ("the result achieved, a 7% recovery of the estimated damages, falls within the range of typical recoveries in complex securities class actions."); *Nichols v. SmithKline Beecham Corp.*, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving settlement that represented

9

between 9.3% and 13.0% of claimed damages); *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2:12-cv-03824, ECF No. 665 (E.D. Pa. Sept. 15, 2014) (approving settlement in complex antitrust pharmaceutical action where "[t]he Settlement amount—$15 million—is reasonable in light of the damages estimates, which were between $23 million and $1 billion, [and] the risks of litigation that I have described").

In exchange for the $13.45 million in settlement consideration, settlement class members will release their claims against Allergan and the other defined Released Parties. *See* Settlement Agreement, ¶ 11.  The Settlement Agreement properly tailors this release of claims to cover those claims related to the factual allegations in the FAC. *See id*.  The settlement's bargained-for release of claims, therefore, is fair, reasonable, and supports preliminary approval because "a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006).

At bottom, the decision now before the Court is merely whether the proposed class-wide settlement should be presented to the class members for their consideration. "At this preliminary stage and because Class Members will receive an opportunity to be heard on the settlement, 'a full fairness analysis is unnecessary[.]'" *Munday v. Federal Navy Credit Union*, 2016 WL 7655807, at *7 (C.D. Cal.  Sept. 15, 2016) (Staton, J.) (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)).  Instead, preliminary approval and notice of the settlement terms to the proposed class are appropriate where "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of *possible* approval[.]"  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (emphasis added) (internal quotation marks and citation omitted); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need

10

only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out." (emphasis in original)).  The factors that courts look to in ascertaining whether to approve a settlement confirm that this settlement readily falls within the range of settlements that merit preliminary approval.[5]

### 1. The Vigorously Disputed Strength Of Plaintiffs' Case Supports The Reasonableness Of This Proposed Settlement.

Basic to the process of deciding whether a proposed compromise is fair and equitable "is the need to compare the terms of the compromise with the likely rewards of litigation." *Acosta*, 243 F.R.D. 377, 389 (C.D. Cal. 2007) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424  25 (1968)); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 ("To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." (citations omitted)).  "In so doing, a court must 'apprise [itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." *Acosta*, 243 F.R.D. at 389 (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

Although Class Counsel believed fully in the merits of the case, it is undeniable that real obstacles were present that could have precluded any recovery.  This much is confirmed by reviewing the summary judgment briefing and oral argument that came before the Court prior to parties' reaching this proposed settlement.  In addition to asserting various arguments relating to Plaintiffs' liability theories, Allergan argued strenuously that, regardless of Plaintiffs' other allegations, Plaintiffs would be unable to show causation because the FDA approval timelines for MT-10109L would have

---

[5] These factors generally are relied upon by courts in deciding whether to grant final approval to class-wide settlements.  For completeness and transparency, Plaintiffs address these factors in connection with this earlier *preliminary* approval decision. Plaintiffs also will discuss these factors in connection with any motion for final approval after the class has had the opportunity to review the proposed settlement.

prevented regulatory approval and commercial launch of the product in the United States before the start (or even end) of the damages Class Period.  Although Class Counsel countered Allergan's arguments and evidence in a manner that Class Counsel believe should have resulted in the denial of Allergan's summary judgment motion, the summary judgment landscape remained very much uncertain.  Even after the parties argued their summary judgment positions during a lengthy hearing, the Court requested supplemental briefing on this causation and timeline issue.  *See* Dkt. No. 371 (Order requesting supplemental briefing on the timeline and causation issue).

As the Court's Order requesting supplemental briefing noted, "causation is a central issue in this case, and the Court has determined that a more focused evidentiary presentation would assist the Court in ruling on the parties' Motions."  *Id.*, at 3:6-8.  The relevant point for purposes of this motion and evaluating the reasonableness of the proposed settlement is that as of the date that the parties executed their Settlement Agreement, the Court's decision on summary judgment was very much at play.  And, had the Court ultimately ruled in Allergan's favor after receipt of the parties' supplemental submissions, the class members would have recovered nothing and would have been liable for Allergan's taxable costs.  Given this context and procedural posture, the proposed settlement, which provides class members with a multi-million dollar recovery, is unquestionably fair and worthy of preliminary approval.

### 2.   The Risk, Expense, Complexity, And Likely Duration Of Further Litigation All Support Preliminary Approval Of The Class-wide Settlement.

There exists a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998).  Although both Allergan and Class Counsel were and remain prepared to litigate the action to trial and through appeal, it is also the case that the Settlement Class faced several hurdles—summary judgment motions, and the potential

12

for appeals—before even reaching trial.  And, "[a]s in any case, there is a substantial risk of losing at trial." *Munday*, 2016 WL 7655807, at *8.

Here, the uncertainty and complexity of the litigation and the outcome of any appeal were ever-present.  Even at the pleadings stage, the Court acknowledged the uncertain legal standards that would apply to the particular factual circumstances at issue in this case.  For example, in addressing Allergan's argument in its motion to dismiss that Plaintiffs lacked antitrust standing because the Medytox MT-10109L had not received FDA approval, the Court noted that, "[t]he Ninth Circuit has not specifically ruled on whether the absence of FDA approval indicates that any harm is too speculative to warrant finding antitrust standing." *Tawfilis v. Allergan, Inc.*, 157 F. Supp.3d 853, 866 (C.D. Cal. 2016) (Staton, J.).  While the Court denied Allergan's motion to dismiss the First Amended Complaint, had the litigation proceeded, Allergan would have vigorously challenged at trial and on appeal the Plaintiffs' antitrust standing to bring suit in the face of a lack of FDA approval for MT-10109L, among other evidence.  Given the lack of an express ruling by the Ninth Circuit on this central issue, the uncertainty of ongoing litigation was particularly acute.

The uncertainty and risk that would endure if adversarial litigation continued was not limited to legal issues or standards.  As the Court made clear in denying Plaintiffs' motion for judgment on the pleadings, there also was a real factual question as to whether Plaintiffs ultimately could prove that Allergan and Medytox were competitors in the United States for purposes of Plaintiffs' antitrust claims.  *See Tawfilis v. Allergan, Inc.*, 2016 WL 6156197, at *2 (C.D. Cal. Aug. 11, 2016) (Staton, J.) ("The mere fact that the Agreement allocates certain territories does not resolve the issues identified in the Court's prior order:  namely, issues concerning Medytox's intent to enter—or not enter—the United States market, and whether or not Medytox could have, in fact, ever done so.").

There is little doubt that continued litigation of this case up to and through trial would be costly and fraught with risk.  The trial itself would be expensive, complex, and

13

of an uncertain outcome.  Further, it is likely that any trial outcome would be vigorously challenged on appeal.  The current Ninth Circuit docket entails a routine timeline in civil cases of two years or more from the time of a filing of a notice of appeal until a time a ruling is issued.  *See* Katriel Decl., at ¶ 11.  Thus, without a settlement, the class faced real and uncertain hurdles as well as a significant and meaningful delay in obtaining any redress.  This factor, therefore, favors preliminary approval of the Settlement Agreement.

### 3.   The Risk Of Maintaining Class Action Status Throughout Trial And Appeal Also Supports Preliminary Approval.

A closely related factor requires the Court to assess the likelihood that Plaintiffs can maintain certification of the class through the duration of trial and any appellate review.  *See Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003).  Here, Plaintiffs successfully obtained class certification.  Their motion and class certification position, however, were vigorously disputed by Allergan.  Among other points of dispute were whether proof of class-wide impact, given Allergan's rebate programs, required Plaintiffs to identify which class members would have purchased MT-10109L in the but-for world.

Although Class Counsel continue to believe in the correctness of these classes' certification, these disputed arguments likely would have been revisited on appeal had litigation proceeded.  The risk to Plaintiffs' favorable class certification result cannot be ignored.  This is exemplified by the fact that Allergan's same counsel recently managed to secure from the United States Court of Appeal for the First Circuit a grant of a Rule 23(f) interlocutory appeal of a federal district court's class certification order in an antitrust class action filed against an Allergan subsidiary.  *See In re Asacol Antitrust Litig.*, No. 17-8038 (1st Cir. Jan. 17, 2018).  The First Circuit entered that  Rule 23(f) order merely days before the district court trial in that antitrust class case was scheduled to begin.  The First Circuit stayed the trial until the appeal of the class certification order was concluded.  *See In re Asacol Antitrust Litig.*, No. 18-1065 (1st Cir. Jan. 25, 2018). Although Allergan did not file a Rule 23(f) petition for interlocutory review in this case,

14

it was free to challenge the class certification decision in any appeal of a final judgment in this action.  As *In re Asacol Antitrust Litigation* shows, a mere grant of class certification does not immunize such a ruling from appellate review.

Given the hotly contested class certification arguments, each of which were supported by dueling expert witnesses, the risk to Plaintiffs of having their favorable class certification order scrutinized anew on appeal cannot be ignored.  This factor, therefore, also supports preliminary approval of the class-wide settlement.

### 4. The Amount Offered In Settlement Is Reasonable And Supports Preliminary Approval.

The amount offered as settlement consideration is reasonable, fair, and supports preliminary approval.  The Settlement Agreement establishes a $13.45 million settlement common fund.  As already detailed at Section II.B. *supra*, this amount is within a reasonable range when measured against the damages sought by the class members at trial and the risks faced by continued litigation.  That the settlement fund is entirely non-reversionary and payable to the class members without the need for any claim form submission further evidences the reasonableness and fairness of the settlement consideration.  The $13.45 million settlement consideration is in line with similar recently approved antitrust class action settlements in the pharmaceutical industry.  Just last year, for example, the federal district court for the district of Massachusetts approved a $15 million class-wide settlement entered by Allergan's subsidiary, Warner Chilcott, and direct purchasers of its Asacol drug.  *In re Asacol Antitrust Litig.*, 15-cv-12730-DJC, ECF No. 648 (D. Mass Dec. 7, 2017); *see also* www.delzicolantitrustsettlement.com/media/1057881/v3_aoe_notice_091917_final-web.pdf. (last visited Jan. 29, 2018) (published notice of $15 million class action settlement in antitrust action against Allergan's subsidiary, Warner Chilcott).

The reasonableness of the amount offered in settlement supports preliminary approval.

**5.      The Advanced Stage Of The Proceedings Supports Preliminary Approval.**

This factor requires the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. Unquestionably, the parties had an ample basis and record upon which to entertain settlement discussions.  By the time this settlement was reached, fact and expert discovery, both as to class certification and the merits, had concluded.  Allergan produced and Class Counsel had reviewed approximately one million pages of documents produced as part of written discovery. *See* Katriel Decl., at ¶ 5.  More than two dozen depositions had been taken from witnesses across the globe, including Allergan and third-party witnesses in the United States, Ireland, South Korea, Spain, and the United Kingdom. *Id*., at ¶¶ 5-6.  Each party had retained numerous expert witnesses who submitted expert reports and opinions on all key aspects of the case, including antitrust economics, FDA regulatory approval, medical indications for botulinum neurotoxins, marketing, and licensing in the pharmaceutical industry. *Id*., at ¶ 6.

In addition to the extensive factual record, the parties had the benefit of the Court's prior rulings, the colloquies with the Court during the extended summary judgment hearing, and the benefit of a full day mediation session before an experienced mediator, retired Magistrate Judge Edward A. Infante of JAMS. *Id.*, at ¶ 7.  Armed with this wide array of information, counsel for the parties were more than adequately equipped to entertain and properly weigh any settlement discussions and offers.

This factor favors preliminary approval of the Settlement Agreement.

**6.      The Experience And Views Of Counsel Favor Preliminary Approval.**

As courts in the Ninth Circuit have recognized, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re American Apparel, Inc. v. S'holder Litig.*, 2014 WL 10212865, at *14 (C.D. Cal. July 28, 2014) (citation omitted).  This presumption is justified because "[p]arties represented by

16

competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Id.* (citation omitted).  Class Counsel have a documented record and experience in litigating antitrust class actions, as the Court found in appointing them Class Counsel.  It is Class Counsel's view, based on their experience and knowledge of this case, that this settlement is fair, reasonable, and furthers the interests of the members of the settlement class.  *See* Katriel Decl., at ¶¶ 3-11, 16. Thus, this factor favors preliminary approval.[6]

## CONCLUSION

For all the foregoing reasons, Plaintiffs' unopposed motion for preliminary approval of the class-wide settlement should be GRANTED.

Dated: February 9, 2018                    Respectfully submitted,

        /s/ Roy A. Katriel
Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM**
4660 La Jolla Village Drive, Suite 200
San Diego, CA 92122
Telephone: (858) 546-4435
Facsimile:  (858) 430-3719
E-mail: rak@katriellaw.com

Ralph B. Kalfayan (133464)
**KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
E-mail:rkalfayan@kkbs-law.com

*Class Counsel*

---

[6] The other factor generally considered by courts in assessing whether to approve a proposed class-wide settlement is the reaction of the class members to the proposed settlement. *See Munday*, 2016 WL 7655807, at *9.  Discussion of this factor, however, must await until the class is informed of the proposed settlement and, therefore, will be addressed as part of any motion for final approval of the settlement.

17