Roy A. Katriel (265463)
**THE KATRIEL LAW FIRM**
4660 La Jolla Village Drive, Suite 200
San Diego, CA 92122
Tel:    (858) 546-4435
Fax:    (858) 430-3719
E-mail: rak@katriellaw.com

Ralph B. Kalfayan (133464)
**KRAUSE, KALFAYAN BENINK & SLAVENS, LLP**
550 West C Street, Suite 530
San Diego, CA 92101
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
E-mail:rkalfayan@kkbs-law.com

*Class Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ADEL TAWFILIS, D.D.S. D/B/A CARMEL VALLEY CENTER FOR ORAL AND MAXILLOFACIAL SURGERY AND HAMID A. TOWHIDIAN, M.D., On Behalf Of Themselves And All Others Similarly Situated,**<br><br>**Plaintiffs,**<br><br>**vs.**<br><br>**ALLERGAN, INC.**<br><br>**Defendant.** | **Case No.  8:15-cv-00307-JLS**<br><br>**PLAINTIFFS' NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF INCENTIVE AWARDS**<br><br>**Judge: Hon. Josephine L. Staton**<br>**Courtroom: 10A, 10th Floor**<br>**Hearing Date:  August 24, 2018**<br>**Hearing Time: 2:30 p.m.** |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION……………………………………...…...1

MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF INCENTIVE AWARDS……………………………….…………1

I.      INTRODUCTION AND SUMMARY OF MOTION…………………….……2

The Complexity, Unique Nature, And Extent Of This Litigation………..……………2

The Significant Risk Undertaken By Class Counsel……………………….……3

The Exemplary Results, Including Automatic Payment To All Class Members……...4

The Fee Award Sought Is Reasonable Under Either The Percent-Of-The-Fund Or The Lodestar Method…………………………………………………………………5

The Litigation Expenses Incurred Were Reasonable And Necessary……………………7

The Incentive Award Requests Are Appropriate And Reasonable………………………8

II.     CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER EITHER THE PERCENT-OF-THE-FUND OR LODESTAR APPROACH…..…………9

    A. The Fee Request Is A Reasonable Percent Of The Fund…………...………9

        1.  The Extent And Complexity Of This Litigation Exceeds An Ordinary Case…………………………………………………….………15

        2.  The Inordinate Litigation Risk Undertaken By Class Counsel On A Contingent Fee Basis Also Supports The Fee Request……………...18

        3.  The Results Achieved Support Class Counsel's Fee Request…...……19

    B. Class Counsel's Fee Requests Also Is Reasonable Under The Lodestar Approach……………………………………………...…………20

III.    THE EXPENSES INCURRED BY CLASS COUNSEL WERE NECESSARY TO THE LITIGATION, AND SHOULD BE REIMBURSED…………………24

IV.     THE REQUESTED INCENTIVE AWARDS SHOULD BE APPROVED….…24

CONCLUSION……………………………………………………25

i

# TABLE OF AUTHORITIES

**Cases:**

*Beaver v. Tarsadia Hotels*,
2017 WL 4310707 (S.D. Cal. Sept. 28, 2017)..............................................................15

*Burden v. SelectQuote Ins. Servs.*,
2013 WL 3988771 (N.D. Cal. Aug. 2, 2013)...............................................................14

*Davis v. Cole Haan, Inc.*,
2015 WL 7015328 (N.D. Cal. Nov. 12, 2015)..............................................................14

*Espinosa v. California College of San Diego, Inc.*,
2018 WL 1705955 (S.D. Cal. Apr. 9, 2018)................................................................15

*Forcellati v. Hyland's Inc.*,
2014 WL 1410264 (C.D. Cal. Apr. 9, 2014)..................................................................4

*In re Asacol Direct Purchaser Antitrust Litig.*,
No. 1:15-cv-12730-DJC (D. Mass.)............................................................10, 23

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. Jun. 10, 2005)............................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)....................................................................14

*In re NCAA Athletic In Grant-In-Aid Cap Antitrust Litig.*,
2017 WL 6040065 (N.D. Cal. Dec. 6, 2017)..............................................................23

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)..............................................................8, 17, 19, 20

*In re Optical Disk Drive Prods. Antitrust Litig.*,
2016 WL 7364803 (N.D. Cal. Dec. 19, 2016)........................................17, 19, 20

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)..............................................................14

*In re Prudential Sec. Inc.*,
1995 WL 798907 (S.D.N.Y Nov. 20, 1995)……………………………………..……….4

*In re Relafen Antitrust Litig.*,
231 F.R.D 52 (D. Mass. 2005)…………………………………………………..……11

*In re Toys R Us-Delaware FACTA Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014)……………………………….………………4, 25

*In re Washington Public Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)……………………………………..……………..6

*Jensen v. First Trust Corp.*,
2008 WL 11338161 (C.D.  Cal. Jun. 9, 2008)…………………………………14

*Lozano v AT&T Wireless Srvcs.*,
2010 WL 11520704 (C.D. Cal., Nov. 22, 2010)……………………..……………25

*Lusby v. GameStop Inc.*,
2015 WL 1501095 (N.D. Cal. Mar. 31, 2015)………………………………………..14

*McDonald v. Airport Terminal Srvcs.*,
2013 WL 12251409 (C.D. Cal. Nov. 19. 2013)………………………………..8, 21

*Morris v. Lifescan, Inc.*,
54 Fed. Appx. 663 (9th Cir. 2003)……………………………..……………6

*Paul, Johnston, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989)…………………………………………..…………6

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000)…………………………………..…………….8

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009)……………………………………..………..4, 25

*Shames v. Hertz Corp.*,
2012 WL 5392159 (S.D. Cal. Nov. 5, 2012)……………………………………20

iii

*Spann v. J.C. Penney Corp.*,
211 F. Supp.3d 1244 (C.D. Cal. 2016)…………………………………..……………6

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)……………………………………………………………20

*Tawfilis v. Allergan, Inc.*,
157 F. Supp.3d 853 (C.D. Cal. 2016)……………………………………………14, 18

*Trustees of the Construction Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.*,
460 F.2d 1253 (9th Cir. 2006)……………………………..……..……..8, 24

*Vasquez v. Coast Valley Roofing, Inc.*
266 F.R.D. 482 (E.D. Cal. 2010)……………………………..…………………25

*Villa v. National Football League*,
No. 5:12-cv-5481-EJD (N.D. Cal.)……………………………....………………10, 23

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)…………………………………………….………6

iv

**NOTICE OF MOTION AND MOTION**

To Defendant, its counsel of record, and any other interested parties:

PLEASE TAKE NOTICE THAT on August 24, 2018, at 2:30 p.m., at Courtroom 10A of the United States District Court for the Central District of California, Santa Ana Division, in Santa Ana, California, or at such other time or place as this Court may Order, pursuant to Federal Rule of Civil Procedure 23(h) and the terms of the classwide Settlement Agreement, Plaintiffs Adel Tawfilis, D.D.S. d/b/a Carmel Valley Center For Oral And Maxillofacial Surgery and Hamid A. Towhidian, M.D. (collectively "Plaintiffs"), by and through their undersigned counsel, will and do hereby move this Court in unopposed fashion for an Order awarding Class Counsel attorneys' fees in the amount of $4,482,885, reimbursing their expenses and costs of suit incurred in prosecuting this action, amounting to $1,165,096.10 (of which $64,000 amount to settlement notice and administration costs invoiced by the Court-approved Settlement Administrator), and approving the payment of an incentive award in the amount of $5,000 to each of the two named class representatives for their work undertaken in this action in a manner that yielded a successful settlement benefiting the class members.

This unopposed motion is based on the accompanying Memorandum in Support, the Declaration of Roy A. Katriel, the Declaration of Ralph B. Kalfayan, any argument of counsel, and such additional material as this Court may consider.

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND APPROVAL OF INCENTIVE AWARDS**

Plaintiffs file this motion for an award of attorneys' fees, reimbursement of expenses, and approval of incentive awards as part of the classwide settlement with Allergan, Inc. ("Allergan"), which the Court preliminarily approved on March 8, 2018. Because Class Counsel has undertaken significant risk, performed enormous amounts of work in a complex case that is in its fourth year, and achieved an excellent result for the

1

Class, Plaintiffs respectfully request that the Court award the attorneys' fees, expenses, and incentive awards that Allergan has agreed to pay under the settlement.

The amount of attorneys' fees sought, $4,482,885, represents a *negative* 0.91 multiplier of Class Counsel's lodestar[1], and amounts to one third of the settlement fund. As we detail below, under either the percent-of-the-fund or the lodestar approach for analyzing fee petitions, the fee award sought is reasonable and justified.  Likewise, the litigation expenses for which Class Counsel seek reimbursement were all reasonably incurred and necessary for the successful prosecution of this action, as documented below and in the accompanying Katriel and Kalfayan Declarations.  So too, the $5,000 incentive awards sought for Drs. Tawfilis and Towhidian are reasonable and appropriate in recognition of the meaningful work and investment of time devoted by these two physicians for the benefit of all class members.

## I.    INTRODUCTION AND SUMMARY OF MOTION

### The Complexity, Unique Nature, And Extent Of This Litigation

Now in its fourth year, this complex antitrust litigation has been no ordinary case. It involved massive amounts of discovery, comprising nearly one million pages of often highly technical documents produced by Allergan and third parties.  Allergan's summary judgment motion alone entailed 274 separate Statements of Undisputed Fact and 311 filed exhibits, with these statements collectively supported by thousands of documents, declarations, or filed exhibits.  The parties took 28 depositions, including 14 fact (*i.e.,* non-expert) depositions conducted by Class Counsel, in addition to the expert depositions taken at both the class certification and merits phases of the case.  The discovery and litigation literally spanned the globe; Class Counsel took or defended depositions not only across the United States, but also in Korea, Ireland, Spain, and the United Kingdom.  Twelve testifying experts were retained and submitted 25 expert

---

[1] The term "negative" multiplier refers to a positive number less than one because that fractional figure, though a positive number, reduces the lodestar amount.

2

reports in support of the parties' respective positions.  Two other non-testifying consultant experts also were retained.  The expert reports were in addition to the fact declarations of Allergan's witnesses in support of Allergan's summary judgment motion.

The case was contentious and vigorously litigated, as evidenced by the briefing, entailing over a dozen separate motions.  *See* Section II.A *infra*.  Despite this complexity and fast pace, the work product was of unimpeachable quality.  Judge Staton recognized as much during the hearing on the parties' summary judgment cross-motions: "I do want to say that I appreciate the briefing on this.  It was very well done." Dkt. No. 360 [Tr. Of Hrg. On Summary Judgment Cross-Motions], at 57:25-58:1.

**The Significant Risk Undertaken By Class Counsel**

For nearly four years, Class Counsel—a sole practitioner and a small Plaintiffs' class action firm— funded, litigated, and defended this matter without any compensation whatsoever and with no assurance that they ever would be paid.  Their out-of-pocket outlay alone to retain the experts, host the discovery documents, and for other essential litigation needs amounted to over one million dollars, which Class Counsel fronted.  The loss of any substantive motion or a defeat at trial or on appeal would result in the unrecoverable loss of all these expenses, not to mention the investment of time that Class Counsel devoted to the case.  The risk Class Counsel bore in undertaking this action and litigating it as aggressively as they did on behalf of the Class was real and significant.

Moreover, the risk and uncertainty that Class Counsel faced was especially pronounced in this antitrust matter, given the absence of any governmental participant. Unlike many private antitrust class actions that follow and rely upon the work product of enforcement matters or publicly announced investigations commenced by the Federal Trade Commission ("FTC") or the Department of Justice, here Class Counsel blazed their own trail, crafted the legal theory from scratch, and developed the supporting facts without any government involvement.  The FTC never took any enforcement action in connection with the Allergan-Medytox Agreement.  *See* Decl. of Carrie Mahan Filed In

Unopposed Motion For Award Of Attorneys' Fees, Reimbursement
Of Expenses, And Approval Of Incentive Awards

Supp. Of Allergan's Mtn. For Summ. Judgmt.  Thus, Class Counsel took on a case that neither the federal government nor any other private firm chose to undertake.  *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (finding that district court did not abuse its discretion in considering that "there were no government coattails for the class to ride" in approving antitrust class settlement); *In re Prudential Sec. Inc.*, 1995 WL 798907, at * 8 (S.D.N.Y Nov. 20, 1995) (approving class settlement, recognizing added risk by plaintiffs' counsel in that "Counsel for the class action plaintiffs did not 'ride the coattails' of governmental agency investigations.").

**The Exemplary Results, Including Automatic Payment To All Class Members.**

The risk and efforts of Class Counsel proved successful.  The settlement benefits the class members in a manner few class actions do.  It not only results in a multi-million dollar fund provided by Allergan to compensate *all* class members for their alleged overcharges on Botox® Cosmetic purchases.  More uniquely, the settlement provides that the entire net settlement fund (*i.e.*, the entire fund amount net of any fees and expenses awarded by the Court) will be disbursed to the settlement Class members *automatically* without the need for the submission of any claim form or other documentation.  That is, *the claims rate is assured to be 100 percent,* unlike the typical single-digit claim and recovery rates ordinarily seen in class actions.  *See Forcellati v. Hyland's Inc.*, 2014 WL 1410264, at *6 (C.D. Cal. Apr. 9, 2014) ("The reality is the number of class members who actually file claims is relatively low. [T]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.") (internal quotations omitted).  As the Central District of California has recognized, the dilution that frequently is brought about by a low claims rate is significant in reviewing an attorney fee request.  *See In re Toys R Us-Delaware FACTA Litig.*, 295 F.R.D. 438, 457-58 (C.D. Cal. 2014) (comparing requested attorney fee award against the actual benefit to class members based on likely claims rate in determining whether fee award was disproportionate).

And, the recovery provided to class members by this settlement fund is significant,

and far in excess of the consideration offered in a typical class action settlement.  If Plaintiffs' motion for attorneys' fees, expenses, and incentive awards is granted, the resultant net settlement fund of $7,792,018.90 will be divided among 34,471 settlement class members, thereby averaging $226.05 per class member[2].  Of course, because the settlement allocation is governed by the number of Botox® Cosmetic units purchased, many class members who purchased Botox® Cosmetic in larger quantities will see a much larger recovery, even in the thousands of dollars.

## The Fee Award Sought Is Reasonable Under Either The Percent-Of-The-Fund Or The Lodestar Method

Having undertaken this effort and risk over nearly four years, and having achieved this result for the benefit of all class members, Class Counsel now respectfully file this motion for recovery of their fees and expenses, and for approval of incentive awards to compensate the two named plaintiff class representatives.  Paragraph 10 of the classwide settlement agreement provides for such relief, with Allergan agreeing to pay the fees, expenses, and incentive awards now being sought, subject to Court approval.  The fee shifting provision found at Section 4 of the federal Clayton Act, the common law's common benefit doctrine, as well as Federal Rule of Civil Procedure 23(h), also all provide for this same relief.  *See* Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").

The law recognizes two separate means of reviewing a fee petition—the so-called "percent-of-the-fund" and the lodestar methods.  We discuss our fee petition in light of these two separate methods at Sections II.A and II.B *infra*.  As shown in that discussion, the fee award sought is reasonable and justified under either method.

Under the "percent of the fund" approach, the Ninth Circuit has noted that while

---

[2] If Class Counsel's motion is granted, the net settlement fund will be $7,792,018.90 (equal to $13,450,000 settlement less $4,482,885 in fees, $1,165,096.10 in expenses, and $10,000 in incentive awards).  There were 34,471 settlement class members.

5

25 percent of a settlement fund may be viewed as a "starting point" benchmark in considering attorneys' fee motions, "the 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases.  Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case. As we said in *WPPSS,* in passing on post-settlement fee applications, 'courts cannot rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case.'" *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) (quoting *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994)). Underscoring that 25% percent of the fund should be only a starting point that should not govern all fee awards, one year after it decided *Vizcaino*, the Ninth Circuit affirmed a district court's 33 percent-of-the-fund fee award (the same percentage sought here), noting that "[w]e conclude that the district court considered the relevant circumstances and did not abuse its discretion in finding an award of 33 percent to be reasonable." *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663 (9th Cir. 2003).  As the Ninth Circuit explained, a 33 percent of the fund award was reasonable because, at bottom, "[t]he district court may adjust the percentage 'upward or downward to account for any unusual circumstances involved' in the case." *Id.*, (quoting *Paul, Johnston, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).  Hewing to this analysis, the Central District of California also has recognized that, "[u]nder the percentage method, California has recognized that *most fee awards based on either a lodestar or percentage calculation are 33 percent* and has endorsed the federal benchmark of 25 percent." *Spann v. J.C. Penney Corp.*, 211 F. Supp.3d 1244, 1262 (C.D. Cal. 2016) (emphasis added).

Section II.A. *infra* itemizes the support for a 33.3 percent-of- the-fund fee award. It also cites a long line of federal cases from this district and nationwide that have awarded this same or similar percent-of-the-fund fee in antitrust and other class action settlements.  The fee award sought is reasonable under the percent-of-the-fund approach.

6

1   Turning to the lodestar method, which begins by multiplying the number of

2   billable hours by the attorneys' reasonable hourly billing rates, as adjusted by any

3   appropriate positive or negative multiplier, Section II.B. below also documents that

4   Class Counsel's fee request is independently reasonable under the lodestar method.  The

5   total lodestar incurred by Class Counsel during the near four-year tenure of this litigation

6   is $4,917,978.50, comprised of $2,227,848.50 in attorneys' fees billed by the law firm of

7   Krause, Kalfayan, Benink & Slavens, LLP, and $2,690,130.00 billed by The Katriel Law

8   Firm, P.C.  The $4,482,885.00 fee that Class Counsel seek, therefore, represents a

9   *negative* 0.91 multiplier of their collective lodestar in this case.  That is, in order to

10  enhance the settlement consideration made available to class members, Class Counsel's

11  motion foregoes seeking payment for some of their billable attorney hours actually

12  devoted to the case, and their fee request amounts instead to 91 percent of their billable

13  time.  The Central District of California has held that an upward departure from 25

14  percent benchmark starting point to a 33 percent-of-the-fund fee is justifiable where, as

15  here, one third of the fund corresponds to less than the attorneys' billable fees

16  documented in their lodestar submissions.  *See McDonald v. Airport Terminal Srvcs.*,

17  2013 WL 12251409, at *10 (C.D. Cal. Nov. 19. 2013) (award of 33 percent of the gross

18  settlement fund justified because, *inter alia*, "the lodestar calculation significantly

19  exceeds the benchmark level of fees.").  The lodestar method independently confirms the

20  reasonableness of the fees sought by Class Counsel.

21  **The Litigation Expenses Incurred Were Reasonable And Necessary**

22  Plaintiffs' request for a reimbursement of litigation expenses totaling

23  $1,165,096.10 also should be approved.  The Ninth Circuit recognizes that litigation

24  expenses are generally recoverable where they "would normally be charged to a fee

25  paying client." *Trustees of the Construction Indus. and Laborers Health and Welfare

26  Trust v. Redland Ins. Co.*, 460 F.2d 1253, 1256 (9th Cir. 2006).  As detailed in Section III

27  below and in the accompanying Katriel and Kalfayan Declarations, all the expenses for

28

*Tawfilis et al. v. Allergan, Inc.,*
Case No.  8:15-cv-307-JLS

Unopposed Motion For Award Of Attorneys' Fees, Reimbursement
Of Expenses, And Approval Of Incentive Awards

which reimbursement is sought meet this criterion.  They amount to expenses incurred in

retaining expert witnesses, hosting electronic discovery, Westlaw and Lexis legal

research costs, court reporters, and other litigation-specific charges like copying,

couriers, travel, and filing fees, as well as the administrative expenses of settlement

administration and notice to the absent class members.  All of these expenses were

reasonable and necessary to successfully litigate this action, and their reimbursement

from the settlement fund should be approved.

Moreover, the Ninth Circuit repeatedly has made clear that it is proper to conduct

any percent-of-the-fund calculation supporting an attorney fee award on the gross

settlement fund *before* any expenses are deducted or reimbursed from the fund.  *In re

Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("The district

court did not abuse its discretion in calculating the fee award as a percentage of the total

settlement fund, including notice and administrative costs, and litigation expenses.");

*Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000) (rejecting an objector's argument

that a fee award in classwide settlement should be based on "net recovery," which does

not include "expert fees, litigation costs, and other expenses" and holding that "the

district court may calculate the fee award using the gross settlement amount.").

## The Incentive Award Requests Are Appropriate And Reasonable

Lastly, the settlement's provision of incentive awards totaling $5,000 to each of

the two named plaintiff Class representatives is proper and should be approved.  Courts

recognize that such awards to class representatives, whose individual efforts in pursuing

the litigation benefitted the class members as a whole, are appropriate and important for

the viability of representative actions.  Here, the two named class representatives, Drs.

Tawfilis and Towhidian, are busy surgeons who run their own practices.  Despite their

obligations to their patients, they devoted their time and efforts to advance this litigation.

Among other contributions, each of the named plaintiffs: sat for a day-long deposition;

met with Class Counsel repeatedly to prepare for depositions and otherwise monitor the

8

1  litigation; produced intrusive documents responsive to Allergan's discovery requests;
2  provided written responses to interrogatories or requests for admission; and, lent their
3  names to this classwide litigation against Allergan, a major supplier to their respective
4  surgical practices.  *See* Kalfayan Decl., at ¶¶ 9-10.  These efforts and investment of time
5  and resources merits recognition by means of an incentive award, and the $5,000 amount
6  for these awards is in line or below incentive awards routinely approved by this Court.
7       For all the foregoing reasons, and as more fully detailed below, Plaintiffs'
8  unopposed motion should be granted.

9  ## II.  CLASS COUNSEL'S FEE REQUEST IS REASONABLE UNDER EITHER THE PERCENT-OF-THE-FUND OR LODESTAR APPROACH.

11       The ultimate standard and goal in granting a fee award request is
12  reasonableness—providing compensation that is reasonable and incentivizes attorneys to
13  take on meritorious legal work on a contingent basis in the future.  In furtherance of
14  these goals, the Ninth Circuit has recognized two independent methods by which a court
15  should review a fee petition in the context of a common fund class action settlement.
16  The percent-of-the-fund approach allocates a certain percent of the settlement fund
17  created by counsel's efforts to the payment of the fee award.  The alternate approach
18  calculates a "lodestar" by multiplying the reasonable billable attorney hours expended in
19  the litigation by a reasonable hourly fee and, if appropriate, adjusts that result by a
20  multiplier to account for circumstances of a particular case or settlement.
21       A court has discretion in electing which method to employ, and regardless of
22  which approach it adopts, a court may use the alternate method as a cross-check on the
23  reasonableness of its initial fee determination.  The fee requested by Class Counsel is
24  reasonable and fully justified regardless of which method is used.

25  ### A. The Fee Request Is A Reasonable Percent Of The Fund.
26       Class Counsel requests an award of attorneys' fees amounting to 33.33 percent
27  of the $13.45 million settlement fund created by Class Counsel's efforts in litigating and

ultimately settling this action.  *See* Settlement Agreement, at ¶ 10. The requested award is reasonable, given the inordinate complexity, undue risk, and overarching scope of the case, as well as the excellent results achieved.  The Ninth Circuit has held that district courts are free to depart from the 25 percent starting point benchmark for percent-of-the-fund fee awards if the record provides support for the departure.  *See Vizcaino*, 290 F.3d at 1048.  That much was confirmed by *Morris*, in which the Ninth Circuit affirmed a 33 percent fee award to class counsel, given the district court's order supporting a departure from the 25 percent starting point benchmark. *See Morris*, 54 Fed. Appx. at 663.

The record of this litigation unquestionably supports an upward departure from the base 25 percent starting point, and we detail that support below.  Before doing so and to place Class Counsel's fee award into proper context, we itemize a cursory list of recent antitrust class action settlements in California and across the country where federal courts have awarded a percent-of-the-fund fee equal or nearly equal to that being requested here.  For example, and of most recent vintage, the latest settled classwide antitrust litigation against an Allergan entity was the direct purchaser antitrust settlement approved last year in *In re Asacol Antitrust Litigation*, in which Allergan's Warner Chilcott subsidiary was sued for allegedly monopolizing the market for its Asacol drug. The district court approved a $15 million settlement, and awarded an attorney fee request of one third of the fund.  *See In re Asacol Direct Purchase Antitrust Litig.*, No. 1:15-cv-12730-DJC (D. Mass.), at Dkt. Nos. 648 (entered Dec. 7, 2017).  Unlike this case, the *Asacol* settlement occurred before class certification, and well before any summary judgment motions had been filed.  That is, the *Asacol* settlement with the Allergan subsidiary occurred at a much earlier stage than the advanced posture of this case.

Equally instructive for context, is the antitrust classwide settlement recently approved by the United States District Court for the Northern District of California in *Villa v. National Football League*, No. 5:12-cv-5481-EJD (N.D. Cal.).  The antitrust settlement, which entailed only a single-state (California) settlement class that also was

10

reached before class certification, created a $4,750,000 settlement fund, and the district court approved a fee award amounting to 32 percent of the fund plus reimbursement of $847,184.64 in expenses.  *See id.*, at Dkt. Nos. 159 (fee motion); 167 (fee award).

Moreover, in the context of antitrust cases in the pharmaceutical industry, district courts have held that awarding one-third of the fund in attorneys' fees is "not unreasonable as a matter of law."  *In re Relafen Antitrust Litig.*, 231 F.R.D 52, 82 (D. Mass. 2005).  This is so given the "highly technical and complex issues with regard to pharmaceutical pricing and distribution, health insurance and federal regulation" in this area.  *Id.*, at 80.  Those considerations are present with full force in this case where highly technical chemistry, manufacturing and control issues relating to the manufacture of botulinum neurotoxins took center stage in the parties' arguments about FDA approval timelines and antitrust causation.  Indeed, the Court itself recognized this undue complexity, by calling for supplemental briefing on this very issue even after the already extensive summary judgment briefing and argument had been submitted. *See* Dkt. No. 371 (ordering supplemental briefing on FDA approval timelines as related to causation).

These fee awards are not anomalous. They represent the heartland of approved fee awards in antitrust cases which, by their nature, are inherently complex to litigate, require particular expertise, and entail great risk in the expenses and efforts required to properly present the case.  Table 1 below shows that courts in California and across the country have awarded one third of the settlement fund as attorney fees in no less than 20 antitrust class settlements involving the pharmaceutical industry during the past 15 years.

## TABLE 1- FEE AWARDS IN FEDERAL ANTITRUST CLASS SETTLEMENTS IN PHARMACEUTICAL CASES

| | Case Name | Order Date | Settlement Amount | Fee Award (% of fund) |
|---|---|---|---|---|
| 1 | *In re Asacol Direct Purchaser Antitrust Litig.*, No. 1:15-cv-12730 (D. Mass); Dkt | 12/7/2017 | $15M | $5M (33.33%) |

11

| | | | | |
|---|---|---|---|---|
| | No. 648 | | | |
| 2 | *In re Prograf Antitrust Litig.*, 11-md-2242 RWZ (D. Mass.), Dkt. No 678 | 5/20/2015 | $98M | $32.67M (33.33%) |
| 3 | *In re Prandin Direct Purchaser Antitrust Litig.*, 10-cv-12141 (E.D. Mich.); Dkt No. 68 | 1/20/2015 | $19M | $6.33M (33.32%) |
| 4 | *Mylan Pharmaceuticals, Inc. v. Warner Chilcott PLC*, 12-cv-3824 (E.D. Pa.); Dkt. No. 665 | 9/6/2014 | $15M | $5M (33.33%) |
| 5 | *In re Skelaxin*, 12-MD-2343 (E.D. Tenn.); Dkt. No. 747 | 6/30/2014 | $73M | $24.33M (33.33%) |
| 6 | *In re Wellbutrin XL Antitrust Litigation*, 08-cv2431 (E.D. Pa.); Dkt. No. 485 | 11/07/2012 | $37.5M | $12.5M (33.33%) |
| 7 | *Rochester Drug Co-Operative, Inc., v. Braintree Laboratories, Inc.*, 07-cv-142 SLR (D. Del.); Dkt. No. 243 | 5/31/2012 | $17.25M | $5.75M (33.33%) |
| 8 | *In re Metoprolol Succinate Antitrust Litig.*, 06-cv-52 (D.Del.); Dkt. No. 194 | 1/12/2012 | $20M | $6.67M (33.35%) |
| 9 | *In re DDAVP Direct Purchaser Antitrust Litig.*, 05-cv-2237 (S.D.N.Y.); Dkt No. 113 | 11/28/2011 | $20.25M | $6.75 (33.33%) |
| 10 | *In re Wellbutrin SR Antitrust Litig.*, 04-cv-5525 (E.D. Pa.); Dkt. No. 413 | 11/21/2011 | $49M | $16.33M (33.33%) |
| 11 | *Meijer, Inc. v. Abbott Labs.*, 07-cv-05985 (N.D. Cal.); Dkt. No. 514 | 8/11/2011 | $52M | $17.33M (33.33%) |
| 12 | *In re Nifedipine Antitrust Litig.*, 03-mc-223 (D.D.C.); Dkt. No. 333 | 1/31/2011 | $35M | $11.67M (33.34%) |
| 13 | *In re Oxycontin Antitrust Litig.*, 04-md- | 1/25/2011 | $16M | $5.33M |

12

| | | | | |
|---|---|---|---|---|
| | 1603-SHS (S.D.N.Y.), Doc. No. 360 | | | (33.31%) |
| 14 | *In re Tricor Direct Purchaser Litig.*, 05-340 SLR (D. Del.); Dkt. No. 543 | 4/23/2009 | $250M | $83.33M (33.33%) |
| 15 | *Meijer, Inc. v. Barr Pharms., Inc.*, 05-2195 (D.D.C.), Dkt. No. 210 | 4/20/2009 | $22M | $7.33M (33.32%) |
| 16 | *In re Remeron Direct Purchaser Antitrust Litig.*, 03-0085 (D.N.J.); Dkt. No. 185 | 11/09/2005 | $75M | $25M (33.33%) |
| 17 | *In re Terazosin Hydrochloride Antitrust Litig.*, 99-md-1317 (S.D.Fla.), Doc. No. 1557 | 4/19/2005 | $74M | $24.17M (32.66%) |
| 18 | *North Shore Hematology-Oncology Assoc., P.C. v. Bristol-Myers Squibb Co.*, 04-cv-248-EGS (D.D.C.); Dkt. No.30 | 11/30/2004 | $50M | $16.33M (32.66%) |
| 19 | *In re Relafen Antitrust Litig.*, 01-12239-WHY (D. Mass.), Doc. No. 297 | 4/09/2004 | $175M | $58.33M (33.33%) |
| 20 | *La. Wholesale Drug Co. v. Bristol-Myers Squibb Co.*, 01-cv-7951 (S.D.N.Y.); Dkt. No. 22 | 4/11/2003 | $220M | $70.33M (31.97%) |

Notably, all of the foregoing federal antitrust pharmaceutical class action settlements, except for *In re Asacol and In re Relafen*, involved antitrust claims involving generic pay-for-delay allegations. Those cases, therefore, involved litigation in which there already existed an established body of law, as well as prior templates and examples of successful litigation, on which the class plaintiffs and their counsel could rely. By contrast, this action, involved a novel legal theory that challenged the lawfulness of a so-called licensing agreement between Allergan and Medytox. The Court itself recognized the unsettled nature of the law underlying Plaintiffs' claims: "[t]he Ninth Circuit has not specifically ruled on whether the absence of FDA approval

13

indicates that any harm is too speculative to warrant finding antitrust standing." *Tawfilis v. Allergan, Inc.*, 157 F. Supp.3d 853, 866 (C.D. Cal. 2016) (Staton, J.).  The greater uncertainty in the legal landscape forming part of this case speaks to the greater risk that Class Counsel undertook in litigating this case within this unsettled legal environment.

Also significant is that the majority of the foregoing antitrust class settlements, in which one third of the settlement fund was awarded in fees, entailed settlements reached *before* the plaintiffs had secured class certification.  That is, the settlements came relatively early in the procedural posture of these cases in terms of the significant milestones of a class action.  By contrast, this settlement was reached on the proverbial eve of trial, not only after Class Counsel successfully prevailed on class certification, but also after the parties had briefed and argued their summary judgment cross-motions.  The greater investment of effort and resultant success in adversarial litigation in this case before settlement also speaks to the merits of Class Counsel's fee request.

Focusing solely on class settlement fee awards entered by federal district courts in California also demonstrates that one third of the settlement fund is commonly awarded.  *See Davis v. Cole Haan, Inc.*, 2015 WL 7015328, at *6 (N.D. Cal. Nov. 12, 2015) (approving 33% fee award); *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *4 (N.D. Cal. Mar. 31, 2015) (granting 33% fee award and collecting cases regarding the same); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of fund); *Jensen v. First Trust Corp.*, 2008 WL 11338161, at *13- *16 (C.D.  Cal. Jun. 9, 2008) (awarding 33.3% of $8.5 million settlement fund plus approving reimbursement of $480,000 in litigation expenses); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. Jun. 10, 2005) ("In applying the above factors, permitting Class Counsel a fee award of 33   % of the common fund is warranted."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming fee award equal to one-third of recovery); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming 33% fee award); *see also In re Heritage Bond Litig.*, 2005 WL

14

1594403, at *18, n. 12 (C.D. Cal. June 10, 2005) (noting more than 200 federal cases have awarded fees higher than 30%). It is, therefore, unsurprising that just this year, another California federal district court remarked that "California courts routinely award attorneys' fees of one-third of the common fund." *Espinosa v. California College of San Diego, Inc.*, 2018 WL 1705955, at *8 (S.D. Cal. Apr. 9, 2018) (quoting *Beaver v. Tarsadia Hotels*, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017)).

### 1. The Extent And Complexity Of This Litigation Exceeds An Ordinary Case.

The sheer extent and complexity of this litigation support a positive departure from the 25 percent benchmark starting point, and the award of one third of the fund. As mentioned, the written discovery in this action entailed nearly a million pages worth of documents produced by Allergan and third parties. *See* Katriel Decl., at ¶ 4; *see also* Dkt. No. 280, at 11:14 (Allergan's summary judgment motion confirming that Allergan alone had produced "hundreds of thousands of pages" in discovery as of the date of the opening summary judgment brief). These documents were often highly technical in nature, containing complex scientific information about, inter alia, the chemistry, manufacturing, and controls involved in Allergan's and Medytox's manufacture of the botulinum neurotoxin drug substance and drug product.

Aside from the voluminous written discovery, the case also entailed extensive deposition testimony. By way of example, whereas Federal Rule of Civil Procedure 30 presumptively limits parties to no more than 10 fact depositions, here Class Counsel alone took 14 fact depositions across the United States, as well as in Ireland, Korea, and the United Kingdom. *See* Katriel Decl., at ¶ 5. These 14 fact depositions taken by Class Counsel were in addition to the seven expert depositions that Class Counsel also took, and also do not include the additional seven fact and expert depositions that Allergan took and that Class Counsel defended across the United States and also in Spain. *Id*. The surpassing in this case by 40 percent of the Federal Rules' presumptive limit on the number of fact depositions available to a party in an ordinary case in federal court also

15

speaks to this not being an ordinary case.

Aside from fact witnesses, the parties designated 12 testifying expert witnesses who collectively submitted 25 expert reports during the class certification and merits phases of the case. *See* Katriel Decl., at ¶ 6. Some of these experts submitted multiple expert reports, not only because they replied to opposing reports of the other side, but also because they filed separate expert reports during the class certification and merits phases of the case. *Id*. By the time the case settled, 12 expert depositions already had been taken and others had been scheduled. The sheer number of expert reports prepared, reviewed, and cross-examined far exceeds that found in the ordinary case, and attests to the complexity of this action.

The complexity and extent of the litigation were not limited solely to the fact or expert discovery produced and reviewed. The docket paints a picture of a case where intense, aggressive motion practice took center stage. Most of the class settlements documented at Table 1 *supra*, in which 33.33 percent-of-the-fund fee awards were granted, involved settlements reached before class certification, where the only substantive motion practice involved the pleadings stage. Here, by contrast, Class Counsel litigated 12 rounds of motions, as summarized below:

|   | Motion And Docket Number | Date Filed |
|---|---|---|
| 1 | Allergan's Motion To Dismiss Original Class Action Complaint, Dkt. No. 26 | 5/8/2015 |
| 2 | Allergan's Motion To Dismiss First Amended Complaint, Dkt. No. 32 | 6/29/2015 |
| 3 | Allergan's Motion For Reconsideration Of Denial Of Motion To Dismiss, Dkt. No. 46 | 10/26/2015 |
| 4 | Plaintiffs' Motion For Partial Judgment On The Pleadings, Dkt. No. 62 | 1/11/2016 |
| 5 | Plaintiffs' Motion For Reconsideration Of Denial | 6/14/2016 |

16

| | | |
|---|---|---|
| | Of Motion For Partial Judgment On the Pleadings, Dkt. No. 114 | |
| 6 | Plaintiffs' Motion For Class Certification, Dkt. No. 119 | 7/19/2016 |
| 7 | Allergan's Motion To Strike Expert Report Of Russell W. Mangum III, Ph.D., Dkt. No. 140 | 10/14/2016 |
| 8 | Plaintiffs' Motion To Strike Expert Testimony Of Dr. Susan Walker, No. 171 | 11/11/2016 |
| 9 | Allergan's Motion To Compel Production Of Documents, Dkt. No. 233 | 3/13/2017 |
| 10 | Plaintiffs' Motion For Partial Summary Judgment As To Liability, Dkt. No. 279 | 8/31/2017 |
| 11 | Allergan's Motion For Summary Judgment, Dkt. No. 280 | 9/01/2017 |
| 12 | Plaintiffs' Motion To Strike Portions Of The Expert Testimony Of Dr. Nita U. Patel, Dkt. No. 362 | 11/09/2017 |

This highly active and aggressive motion practice, which characterized all phases of this litigation, is far from the norm[3].  Moreover, the time, resources, and efforts required to be invested and devoted to this case in order to maintain the foregoing aggressive litigation pace meant that Class Counsel was required to forebear from taking on other litigation matters that could have generated more certain and prompt returns. *See In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WL 7364803, at *7 (N.D. Cal. Dec. 19, 2016) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.2d at 954-55) ("the burdens class counsel experienced while litigating the case (e.g., cost, duration,

---

[3] Many of these motions were accompanied by Applications to file the motions or supporting exhibits under seal.  These procedural Applications were time consuming in that they required identification and redaction of material designated as "Confidential."

foregoing other work)" are important factors in considering a fee award and may justify departing from he 25 percent starting point benchmark). The sheer number, complexity, and significance of the motions filed, all of which were fully briefed or argued before a settlement was ever reached, speaks to the difficulty and extensiveness of the litigation that warrants a departure from the mere starting point benchmark in assessing a percent-of-the-fund fee award.  *Id.*

### 2. The Inordinate Litigation Risk Undertaken By Class Counsel On A Contingent Fee Basis Also Supports The Fee Request.

As documented in the Katriel and Kalfayan Declarations, Class Counsel have incurred out-of-pocket litigation expenses totaling $1,165,096.10 to fund this litigation[4].  The majority of this amount was expended in retaining the necessary expert witnesses. Class Counsel assumed the full risk that these expenses would never be recovered and that their thousands of hours of work on the case would go wholly uncompensated because they undertook the case on a contingent basis.  *See* Katriel Decl., at ¶ 7; Kalfayan Decl., at ¶ 3.   Aside from the inordinately high expenses of litigating this complex antitrust matter, the uncertainty faced by Class Counsel was further enhanced by the nature of the legal theories forming part of this case.  *See Tawfilis*, 157 F. Supp.3d at 866 (Judge Staton noting that the Ninth Circuit had not specifically resolve whether lack of FDA approval rendered standing too speculative). Thus, unlike other pharmaceutical antitrust class actions that built on established case law and prior settlement involving generic entry delay in Hatch-Waxman cases, this case entailed a wholly unique antitrust legal theory that attacked the legitimacy of a licensing agreement.  This untried legal theory, which Class Counsel developed from scratch without any involvement of any governmental agency, speaks to the added risk and difficulty faced by Class Counsel.  The Ninth Circuit has recognized that the inordinate

---

[4] This amount includes $64,000 in settlement notice and administration costs that the Court-approved Settlement Administrator, KCC, has estimated will be billed in administering this settlement to completion.  *See* Ex. _ to Katriel Decl. (settlement administration estimated invoice from KCC).

*Tawfilis et al. v. Allergan, Inc.,*
Case No.  8:15-cv-307-JLS

Unopposed Motion For Award Of Attorneys' Fees, Reimbursement Of Expenses, And Approval Of Incentive Awards

risk, uncertainty of results over this protracted litigation, and the contingent nature of the representation engaged by Class Counsel all are factors that should be considered in setting a fee award and may justify an upward departure from the 25 percent starting point benchmark. *See In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WL 7364803, at \*7 (N.D. Cal. Dec. 19, 2016) (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.2d at 954-55) (identifying the following as among factors that courts should consider in awarding fees and in electing to depart from the 25 percent benchmark: "whether the case was risky for class counsel; . . . the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work); and whether the case was handled on a contingency basis.").

### 3.  The Results Achieved Support Class Counsel's Fee Request.

Of paramount importance in reviewing a fee request and determining a reasonable percent of the fund to award, are the results achieved.  Here, Class Counsel's efforts led to a settlement that benefits all class members by way of a multi-million dollar settlement fund that will be used to compensate for alleged overcharges sustained with every purchase of Botox® Cosmetic.  *See* Settlement Agreement, at ¶ 5(a).  Not only that, but uniquely among antitrust class action settlements in such antitrust cases, Class Counsel's settlement efforts have ensured that the entire net settlement fund will be disbursed to the class members.  None of the fund will go unclaimed.   This is because the settlement reached expressly provides that settlement checks will be mailed to the settlement class members automatically without the need for the filing of a claim form or submission of any other documentation. *Id.*, at ¶ 9(b).  This provision of the settlement was brought about directly as a result of Class Counsel's negotiation efforts.

We are unaware of any other class action settlement where payment to all class members results automatically upon the settlement becoming effective.  None of the settlements identified at Table 1 or cited elsewhere in this brief contained this feature.  The elimination of a claim form requirement directly and immediately enhances the real

value to the class members by many orders of magnitude because the reality in such settlements is that the claims filing rate is in the single digits.  The Central District of California has recognized the importance of the claims rate to fixing a reasonable attorney fee rate. *See Spann*, 211 F. Supp.3d at 1262 (C.D. Cal. 2016).  Here, the lack of a claim form requirement results in an effective claims rate of 100 percent because all settlement class members will be mailed a check upon the settlement becoming effective. This extraordinary result benefitting the Class also supports the requested fee award, and a positive departure from the starting point benchmark of 25 percent of the fund.  *See In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WL 7364803, at *7 (quoting *In re Online DVD-Rental Antitrust Litig.*, 779 F.2d at 954-55) ("whether counsel 'achieved exceptional results for the class'" is factor to consider in awarding attorneys' fees and may justify an upward departure from the 25 percent starting point benchmark).

For all the foregoing reasons, Class Counsel's unopposed request for an award of attorneys' fees amounting to one third of the settlement fund is reasonable, appropriate, and should be approved.

## B. Class Counsel's Fee Request Also Is Reasonable Under The Lodestar Approach.

Class Counsel's fee request also is reasonable under the lodestar method for calculating attorneys' fees.  At least one California federal court has opined that given the fee shifting provision of Section 4 of the Clayton Act, the lodestar approach is preferred in assessing fees in federal antitrust cases.  *See Shames v. Hertz Corp.*, 2012 WL 5392159, at *20 (S.D. Cal. Nov. 5, 2012) ("it bears emphasizing that the antitrust nature of this case played a significant role in the Court's decision to use the lodestar method.").  Under that method, the total number of reasonable hours billed in working the case are multiplied by the reasonable prevailing billable hourly rates for the attorneys performing the work, and this result may be adjusted by a positive or negative multiplier to arrive at a reasonable fee award. *See Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003).  Here, the very factors already discussed that merit an upward

20

departure from the 25 percent starting point benchmark under the percent-of-the-fund approach similarly justify a positive multiplier to Class Counsel's billable work.  Such positive lodestar multipliers, in fact, are routinely awarded in antitrust and other complex class actions in recognition of the particular expertise that such complex representation requires.  *See In re Optical Disk Drive Prods. Antitrust Litig.*, 2016 WL 7364803, at *10 (collecting cases awarding positive lodestar multipliers).

Nevertheless, here Class Counsel's $4,482,885 fee request represents a *negative* multiplier of 0.91.  That is, in order to maximize the recovery made available to the class members, Class Counsel have agreed to forebear from seeking to recover the entire amount of billable work they put in the case.  The Central District of California has found that an upward departure from the benchmark fee request under the percent-of-the-fund method is justifiable when the resultant fee amount is, as here, less than the lodestar billed by counsel.  *See McDonald*, 2013 WL 12251409, at *9 (agreeing that a 33 percent request is warranted because "based on a lodestar calculation, the amount of attorneys' fees is greater than 33 percent of the Gross Settlement Payment").

Class Counsel's collective lodestar amounts to $4,917.948.50.  This is comprised of $2,690,100.00 in billed attorney and paralegal fees by The Katriel Law Firm, P.C. and $2,227,848.50 in billed fees by the law firm of Krause, Kalfayan, Benink & Slavens, LLP.  The breakdown of these firms' respective lodestars is set forth in the accompanying Declarations.  *See* Katriel Decl., at ¶¶ 8-9; Kalfayan Decl., at Ex. 2 thereto. Summarized lodestar figures are tabulated below for each of the two firms:

## LODESTAR SUMMARY FOR THE KATRIEL LAW FIRM

| Name Of Biller And Position | Hourly Rate | Billable Hours | Amount Billed |
|---|---|---|---|
| R. Katriel (Lead Litigation Partner And Class Counsel) | $825 | 3,254.5 | $2,684,962.50 |
| R. Kirrane (Paralegal) | $195 | 26.5 | $5,167.50 |
| | | **LODESTAR:** | **$2,690,130.00** |

## LODESTAR SUMMARY FOR KRAUSE, KALFAYAN, BENINK & SLAVENS

| Name Of Biller and Position | Hourly Rate | Billed Hours | Amount Billed |
|---|---|---|---|
| Ralph Kalfayan (Partner and Class Counsel) | $650 | 983.25 | $639,112.50 |
| Lynne Brennan (Senior Associate) | $600 | 85.70 | $51,420.00 |
| Sarah Abshear (Senior Associate) | $425 | 1155.25 | $490,981.25 |
| Phillip Stephan (Associate) | $375 | 2228.25 | $835,593.75 |
| Rafael Yakobi (Associate) | $300 | 240.47 | $72,141.00 |
| Ian Krupar (Law Clerk) | $225 | 616.0 | $138,600.00 |
| | | **LODESTAR:** | $2,227,848.50 |

22

Unopposed Motion For Award Of Attorneys' Fees, Reimbursement
Of Expenses, And Approval Of Incentive Awards

The hourly rates reflected in the firms' lodestar are reasonable, being less than the hourly rates approved by California courts for attorneys with the same level of experience and responsibility in antitrust cases.  For example, the hourly rates for Roy A. Katriel and Ralph B. Kalfayan, the two lead attorneys in this action are $825 and $650, respectively.  These are *well below* the hourly rates approved by California federal courts in antitrust class action settlements.  *See In re NCAA Athletic In Grant-In-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *8 (N.D. Cal. Dec. 6, 2017) (approving reasonableness of lodestar and noting that "the most senior PSW attorneys on the case— Clifford Pearson and Bruce Simon—billed at hourly rates between $835 and $1,035 over the course of this matter. Another PSW partner billed at between $715 and $870 per hour"); *Villa v. NFL*, No. 5:12-cv-5481-EJD (N.D. Cal.), at Dkt No. 159-1, at ¶ 4 (fee petition declaration documenting hourly rate) and Dkt. No. 167, at ¶ 6 (fee order) (approving fee award based on lodestar billable hourly rate for Roy A. Katriel of $795 for work done between 2012 and 2016 and finding this biling rate reasonable).

The billable hours reflected in the lodestar calculation also are reasonable.  In a case involving the review of nearly one million pages of documents, 28 depositions, 25 expert reports, over 12 adversarial motions, numerous oral arguments and court hearings, and an inordinate amount of necessary legal and factual research, it is inherently reasonable and to be expected that each of the two law firms representing the Class Plaintiffs spent between 3,500 and 5,500 attorney hours on the case.  By way of reference in the recently approved *In re Asacol Antitrust Litigation* settlement, the class counsel's fee petition documented that "over the course of eighteen months, Class Counsel devoted more than 15,000 hours" to the litigation.  *See In re Asacol Antitrust Litig.*, No. 1:15-cv-12730 (D. Mass.), at Dkt. No. 485, at 6 (motion for attorneys' fees by class counsel).  Notably, the *In re Asacol* direct purchaser litigation lasted only eighteen months, was settled before class certification, and well before any summary judgment briefing or argument was held.  That Class Counsel in this more protracted, procedurally

23

advanced, and motion-intensive case was able to litigate this case to settlement at a fraction of the lodestar hours incurred in the recent *Asacol* litigation, speaks to the efficiency with which this case was handled, as well as to the reasonableness of Class Counsel's lodestar submission.  Further, Class Counsel are reducing their lodestar amount by nine percent, as the requested fee amounts to a 0.91 multiplier.  By any objective metric, the lodestar is reasonable and merits approval of the requested fees.

### III.   THE EXPENSES INCURRED BY CLASS COUNSEL WERE NECESSARY TO THE LITIGATION, AND SHOULD BE REIMBURSED.

Class Counsel incurred expenses in the amount of $1,165,096.10, which were reasonable and necessary to litigate this action, and which are reimbursable.  This amount includes $859,254.16 incurred by the law firm of Krause, Kalfayan, Benink & Slavens, LLP, as well as $241,841.18 incurred by The Katriel Law Firm, and an invoice $64,000 by the Court-approved Settlement Administrator, KCC, for the estimated costs of settlement notice and administration services.  The specific breakdown and supporting documentation for these expenses are provided in the accompanying declarations. *See* Kalfayan Decl., at ¶ 7 and Exs. 3-12 thereto; Katriel Decl., at ¶ 10 and Exs. 1-6 thereto.

The expenses incurred are unquestionably proper and subject to reimbursement. The bulk of the expense was incurred in the retention of the necessary testifying expert witnesses, and other major expenses included court reporting fees for the 28 depositions, as well as the online hosting of the hundreds of thousands of pages of written discovery documents.  The expenses, which were fronted by Class Counsel, are not unexpected in a case involving 25 expert reports, 28 depositions, nearly a million pages of documents, and travel to depositions held around the globe.  All of them meet the governing Ninth Circuit standard for reimbursement because they are the type of expense that "would normally be charged to a fee paying client." *Trustees of the Construction Indus. and Laborers Health and Welfare Trust*, 460 F.2d at 1256.

Class Counsel's request for reimbursement of expenses should be granted.

## IV.     THE REQUESTED INCENTIVE AWARDS SHOULD BE APPROVED.

A payment of an incentive award to class representatives is permissible and often awarded as compensation for individuals undertaking the risk and expending time in working with plaintiffs' counsel to advance class members' interests. *See Rodriguez v. West Pub. Corp.*, 563 F.3d at 958-59.  Courts often approve such awards to compensate named plaintiffs for services they provided and the risks taken during the litigation. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010).

Pursuant to the Settlement Agreement, Class Counsel seek approval of $ 5,000 incentive awards for Drs. Tawfilis and Towhidian.  Allergan has agreed to this payment from the settlement fund, subject to the Court's approval.  *See* Settlement Agreement, at ¶ 10.  As documented in the accompanying declarations, the named plaintiffs' involvement in this action was instrumental in achieving this settlement.  Though both named plaintiffs run busy surgical practices, both devoted time to: sit for a day-long deposition; hold multiple in-person meetings with Class Counsel to prepare for deposition and prepare discovery responses; produced intrusive documents related to their surgical practices and patient files; and, lent their names to the litigation against Allergan, an important supplier to their medical practice.  *See* Kalfayan Decl., at ¶¶ 9-10.  Their investment of time and effort merits recognition by way of an incentive award, and the $5,000 amount for each of these awards is consistent with or below awards approved by this Court.  *See, e.g., In re Toys R Us-Delaware FACTA Litig.*, 295 F.R.D. at 472 (approving $5,000 incentive award as reasonable); *Lozano v AT&T Wireless Srvcs.*, 2010 WL 11520704, at *2 (C.D. Cal., Nov. 22, 2010) (approving $7,500 incentive award to named representative and finding such award to be "fair and reasonable").

## CONCLUSION

For all the foregoing reasons, Plaintiffs' unopposed motion should be GRANTED.

25

Dated: May 2, 2018                      Respectfully submitted,


                                        _____/s/ Roy A. Katriel_____
                                        Roy A. Katriel (SBN 265463)
                                        **THE KATRIEL LAW FIRM**
                                        4660 La Jolla Village Drive, Suite 200
                                        San Diego, CA 92122
                                        Telephone: (858) 546-4435
                                        Facsimile:   (858) 430-3719
                                        E-mail: rak@katriellaw.com


                                        Ralph B. Kalfayan (133464)
                                        **KRAUSE, KALFAYAN BENINK &
                                        SLAVENS, LLP**
                                        550 West C Street, Suite 530
                                        San Diego, CA 92101
                                        Telephone: (619) 232-0331
                                        Facsimile: (619) 232-4019
                                        E-mail:rkalfayan@kkbs-law.com

                                        *Class Counsel*

Unopposed Motion For Award Of Attorneys' Fees, Reimbursement
                                Of Expenses, And Approval Of Incentive Awards