JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                                 Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

Present: **HONORABLE JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:     ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                    Not Present

**PROCEEDINGS:  (IN CHAMBERS) ORDER (1) GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (Doc. 392); AND (2) GRANTING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS (Doc. 391)**

Before the Court are two unopposed Motions filed by Plaintiffs Adel Tawfilis, D.D.S. d/b/a Carmel Valley Center for Oral and Maxillofacial Surgery and Hamid A. Towhidian, M.D. ("Plaintiffs"), seeking final approval of the class action settlement and approval of the requested attorneys' fees, costs, and class representative incentive awards. (Mot. for Final Approval, Doc. 392; Fee Mot., Doc. 391). Having reviewed the papers, held a fairness hearing, and taken the matter under submission, the Court GRANTS the Motion for Final Approval of the Class Action Settlement and GRANTS the Motion for Attorneys' Fees, Costs, and Class Representative Incentive Awards.

**I.    BACKGROUND**

   **A.    Procedural History**

On February 24, 2015, Plaintiffs filed the instant antitrust class action against Defendant Allergan, Inc. ("Allergan"). (*See* Compl., Doc. 1.) Plaintiffs, who were direct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG            Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

purchasers of Allergan's botulinum toxin-based neuromodulator, Botox Cosmetic ("Botox"), allege that Allergan entered into an anticompetitive licensing agreement with Medytox, Inc., to forestall competition between the parties' products. (*Id.* ¶ 1.)

On May 29, 2015, Plaintiffs filed their First Amended Complaint, alleging (1) unlawful market allocation, 15 U.S.C. § 1; (2) agreement in restraint of trade, 15 U.S.C. § 1; (3) unlawful maintenance of monopoly market power, 15 U.S.C. § 2; (4) violations of California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700, *et seq.*; and (5) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (FAC ¶¶ 76–113, Doc. 28.)

On June 29, 2015, Allergan filed a motion to dismiss the FAC, which the Court denied in its entirety, along with Allergan's later motion for reconsideration. (MTD, Doc. 32; Order Denying MTD, Doc. 45; Order Denying Motion for Reconsideration, Doc. 55.) Allergan filed an Answer to the FAC on November 3, 2015. (Answer, Doc. 48.)

On January 11, 2016, Plaintiffs moved for judgment on the pleadings or, in the alternative, partial summary judgment as to their claim for unlawful market allocation. (MJP, Doc. 62.) The Court denied Plaintiffs' motion on May 31, 2016, as well as Plaintiffs' later motion for reconsideration. (Order Denying MJP, Doc. 113; Order Denying Motion for Reconsideration, Doc. 128.)

On June 26, 2017, the Court granted in part and denied in part Allergan's *Daubert* motion as to Plaintiffs' expert economist and denied without prejudice Plaintiffs' *Daubert* motion to exclude Allergan's expert. (Order re: *Daubert* Motions and Motion for Class Cert. at 29, Doc. 263.) In the same order, the Court granted Plaintiffs' Motion for Class Certification, certifying the following class under Rule 23(b)(3): "All purchasers within the United States who purchased Botox Cosmetic directly from Defendant Allergan, Inc. [from April 1, 2015 through June 26, 2017] for a price that was based on Allergan's list price." (*Id.* at 4, 29.)

On July 25, 2017, the Court approved the parties' joint proposed notice plan, which involved mailing a short-form notice and publishing online a long-form notice, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                                  Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

approved retention of Kurtzman Carson Consultants, LLC ("KCC") as the claims administrator. (Order Approving Class Notice, Doc. 271.)

On September 1, 2017, the parties filed cross-motions for summary judgment. (Docs. 279, 280.) Following a hearing on the motions, the Court ordered supplemental briefing on the issue of causation. (Order for Supplemental Briefing, Doc. 371.) On December 12, 2017, the parties reached a settlement.

On March 8, 2018, the Court granted Plaintiffs' unopposed motion for preliminary approval of the class action settlement (the "Settlement"), finding that the amount offered in the Settlement was fair, adequate, and reasonable. (Prelim. Approval Order, Doc. 388.) The Court also approved the proposed method of notice to Class Members but required the parties to make certain changes to the proposed Settlement Notice. (*Id.* at 15–16.) After the parties made the required revisions, the Court approved the Settlement Notice forms and ordered them to be disseminated in accordance with the approved notice plan. (*See* Order Approving Settlement Notice, Doc. 390.)

### B.     The Settlement

As discussed in the Court's Preliminary Approval Order, the Settlement provides for a full-distribution, non-reversionary Settlement Fund of $13,450,000. (Settlement § 5(a), Doc. 385-2.) The Settlement Class tracks the definition of the certified class, which includes all direct purchasers of Botox during the period from April 1, 2015 through June 26, 2017. (*Id.* § 9(b).) After deducting attorneys' fees, litigation costs, Plaintiffs' incentive payments, and the costs of administering the Settlement Fund, Class Members will receive a *pro rata* distribution of the remaining amount. (*Id.* § 9(a).) Class Members will have 180 calendar days from the postmarked date of mailing to cash their settlement checks. (Prelim. Approval Order at 10.) To the extent there are any uncashed settlement checks following this 180-day period, the remaining funds will be distributed to one of several potential *cy pres* recipients, all of which are charitable organizations devoted to addressing facial or skin medical conditions. (Settlement § 16.)

In return for their individual settlement payments, Class Members release Allergan and affiliated persons and entities from claims "related to the allegations in the First

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                                   Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

Amended Complaint, prior to the Effective Date, (a) alleged, or which could reasonably have been alleged, in the Class Action, (b) concerning the Medytox-Allergan License Agreement, or (c) purchases of Botox Cosmetic and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, *et seq.*, or any other federal or state statute or common law doctrine relating to antitrust or unfair competition, unjust enrichment, or consumer protection." (*Id.* § 11(a).)

Finally, the Settlement provides that Class Counsel will request an award of attorneys' fees of up to 33.33% of the Settlement Fund and that Plaintiffs may each apply for a $5,000 incentive award. (*Id.* § 10; Long-Form Notice (Revised) at Question 14, Doc. 389-1.) KCC, the Claims Administrator, may also seek reimbursement of expenses up to $75,000. (Settlement § 5(b).)

### C. Notice and Response

Notice was sent to Class Members pursuant to the method proposed by the Settlement and approved by the Court. (Preliminary Approval Order at 14–15.) The revised Settlement Notice adequately describes the litigation and the scope of the involved Class and explains (1) the amount and makeup of the Settlement Fund; (2) the plan of allocation; (3) that Class Counsel will apply for attorneys' fees and costs, and Class Representatives will seek an incentive award; and (4) Class Members' options to participate in or object to the Settlement. (*See* Long-Form Notice (Revised); Short-Form Notice (Revised), Doc. 389-2; Order Approving Settlement Notice.)

On August 2, 2017, Class Counsel provided KCC with a list of 41,516 persons and entities identified as direct purchasers of Botox, which KCC then pared down to exclude purchasers who fell outside the Class Period. (Christman Decl. ¶ 3, Doc. 392-2.) On March 23, 2018, Settlement Notices were mailed to the 34,471 Class Members. (*Id.* ¶ 4.) 1,153 Settlement Notices were returned as undeliverable without forwarding addresses, but KCC successfully performed "skiptrace" searches for the majority of them. (*Id.* ¶¶ 5–6.) KCC also published the long-form Settlement Notice on its website and established a toll-free telephone number, which received 119 calls. (*Id.* ¶¶ 7–8.) As of July 27, 2018,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.: 8:15-cv-00307-JLS-JCG | Date: August 27, 2018 |
| Title: Adel Tawfilis, et al. v. Allergan, Inc. | |

KCC received no objections to the Settlement and one request for exclusion.[1] (*Id.* ¶¶ 9–10.)

KCC estimates that, assuming the Fee Motion is granted as proposed, each Class Member will receive an average payment of $186.75. (*Id.* ¶ 12.)

## II.   FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.   Legal Standard

Before approving a class-action settlement, Rule 23 of the Federal Rules of Civil Procedure requires the Court to determine whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). "To determine whether a settlement agreement meets these standards, a district court must consider a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted).[2] "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

---

[1] This does not include the 17 Class Members who previously requested exclusion in response to the July 25, 2017 class certification notice. (Christman Decl. ¶ 10.)

[2] Factor (7), the presence of a governmental participant, does not apply to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:15-cv-00307-JLS-JCG                                               Date: August 27, 2018
Title:  Adel Tawfilis, et al. v. Allergan, Inc.

### B. Discussion

In its Preliminary Approval Order, the Court evaluated each of the factors identified above to determine whether the Settlement is fair, reasonable, and adequate under Rule 23.  (Prelim. Approval Order at 8–13.)  The Court determined that the following factors weighed in favor of approval: (1) the strength of Plaintiffs' case; (2) the risk, complexity, and likely duration of further litigation; (3) the risk of maintaining class certification; (4) the amount offered in settlement; (5) the stage of the proceedings and extent of discovery completed; and (6) the experience and views of Class Counsel.  (*Id.*)  The Court was also satisfied that there were no signs of collusion between the parties.  (*Id.* at 13.)  Finally, the Court found that conditional certification of the Class for settlement purposes was proper for the same reasons the Court granted class certification.  (*Id.* at 6, *citing* Order re: *Daubert* Motions and Motion for Class Cert. at 14–29.)  The Court sees no reason to depart from its previous conclusions.  The Court therefore incorporates its analysis from the Preliminary Approval Order into the instant Order.

However, at the time of preliminary approval, Plaintiffs did not provide evidence of Class Members' reactions to the proposed Settlement Agreement.  (*Id.* at 12–13.)  Since that time, KCC sent 34,471 Settlement Notices to Class Members by first-class mail.  (Christman Decl. ¶ 4.)  KCC received no written objections to the Settlement and one request for exclusion.  (*Id.* ¶¶ 9–10.)  A small number of objections and opt-outs at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Additionally, Class Counsel submitted declarations from Class Members expressing positive reactions to the Settlement.  (Winslow Decl., Doc. 392-4; Chianese Decl., Doc. 392-5.)  Given these positive reactions, the absence of any objections, and just a single request for exclusion in a Class of nearly 35,000, this factor weighs in favor of granting final approval.  *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving a settlement where the opt-out rate was 2%), *aff'd*, 331 F. App'x 452 (9th Cir. 2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                          Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

Considering all of the factors together, the Court concludes that the Settlement is fair, reasonable, and adequate. Accordingly, the Court GRANTS Plaintiffs' Motion for Final Approval of the Class Action Settlement.

### III.    ADMINISTRATION EXPENSES

The Settlement Agreement provides that KCC will be provided payment for its services out of the Settlement Fund up to $75,000. (Settlement § 5(b).) Plaintiffs request reimbursement to Class Counsel for $63,903 charged by KCC in administration. (Fee Mem. at 24; Katriel Decl. ¶ 10, Doc. 391-1; Ex. 6 to Katriel Decl., Doc. 391-7.) The Court finds these expenses to be reasonable and adequately documented.

Accordingly, the Court GRANTS the Motion as to the costs of administration.

### IV.    ATTORNEYS' FEES

Plaintiffs seek an attorneys' fee award of $4,482,885, which is 33.33% percent of the Settlement Fund. (Fee Mem. at 1.) For the following reasons, the Court finds the requested award to be appropriate and grants the request.

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In the Ninth Circuit, the benchmark for a fee award in common fund cases is 25% of the recovery obtained. *Id.* at 942. Courts must "justify any increase or decrease from this amount based on circumstances in the record." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The Ninth Circuit has identified a number of factors the Court may consider in assessing whether an award is reasonable, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and quality of work, and (4) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                                 Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

contingent nature of the fee and the financial burden carried by the plaintiffs. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002). Counsel's lodestar may also "provide a useful perspective on the reasonableness of a given percentage award." *Id.* at 1050.

The Court evaluates each factor in turn to determine whether an upward departure from the 25% benchmark is justified.

### A.     Results Achieved

Here, Class Counsel achieved a settlement that represents approximately 8.36% of Allergan's maximum potential liability. (Prelim. Approval Order at 8–9.) This percentage of recovery is consistent with prior approved settlements in antitrust class actions. *Mylan Pharms., Inc. v. Warner Chilcott Pub. Ltd. Co.*, 2:12-cv-03824, ECF No. 665 at 9 (E.D. Pa. Sept. 15, 2014) (approving settlement in complex antitrust pharmaceutical action where "[t]he Settlement amount—$15 million—is reasonable in light of the damages estimates, which were between $23 million and $1 billion"); *Nichols v. SmithKline Beecham Corp.*, No. CIV.A.00-6222, 2005 WL 950616, at *16 (E.D. Pa. Apr. 22, 2005) (approving a settlement in complex antitrust action where the settlement amount was between 9.3% and 13.9% of total potential damages). However, this result is especially impressive in the context of this case, which involved not only a complex, unsettled area of the law but also a relatively novel theory of unlawful market allocation through a pharmaceutical licensing agreement. Moreover, Class Counsel was not assisted by government intervention in prosecuting this case. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (noting the difficulty of prosecuting antitrust cases when "there [are] no government coattails for the class to ride"). Even more, all Class Members in this action will receive their settlement checks without the need for filing a claim form. (Settlement § 9(b).) This is unique among pharmaceutical antitrust settlements (*see* Fee Mem. at 19), and thus is a notable factor that the Court considers in evaluating the results of Class Counsel's work. *Cf., e.g. Nichols*, 2005 WL 950616, at *8; *Mylan Pharms.*, 2:12-cv-03824, ECF No. 657-3 at 21 ("Settlement Agreement").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                        Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

Accordingly, the Court concludes that the results achieved weigh in favor of an upward departure from the 25% benchmark.

### B.     Risk of Litigation

The risks presented by this litigation also strongly support an enhanced fee award. As noted above, the legal theories underlying Plaintiffs' case turned on whether a pharmaceutical licensing agreement could have anticompetitive effects before the FDA had approved the licensed product for sale in the United States. *See Tawfilis v. Allergan, Inc.*, 157 F. Supp. 3d 853, 866 (C.D. Cal. 2015) (recognizing that the Ninth Circuit has not ruled on whether the absence of FDA approval defeats antitrust standing). The complexity of this case is further evidenced by the Court's request for additional briefing after the parties had submitted thousands of pages of documents in support of their cross-motions for summary judgment. (*See* Order for Supplemental Briefing.) In sum, "[t]he enormous risk posed by this case, and [Class Counsel's] committed perseverance even in the face of this risk, deserves recognition." *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 7364803, at *7 (N.D. Cal. Dec. 19, 2016). Thus, this factor supports an upward departure.

### C.     Skill Required and Quality of Work

Class Counsel also demonstrated exceptional skill in litigating this case. Over the course of the nearly four years of litigation in one of the most complicated areas of the law, Class Counsel investigated "hundreds of thousands of pages" of written discovery produced by Allergan, took fourteen international fact depositions, participated in twelve expert depositions, and pored over the 25 expert reports that were ultimately submitted. (*See* Fee Mem. at 15–16.) Moreover, the parties engaged in vigorous motion practice, including Allergan's motion to dismiss, Plaintiffs' motion for judgment on the pleadings, two motions for reconsideration, cross-*Daubert* motions, Plaintiffs' successful class certification motion, and cross-motions for summary judgment. Because of the time,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                             Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

resources, and effort required to engage in such aggressive litigation, Class Counsel states that they were required to forego other work that could have "generated more certain and prompt returns." (Fee Mem. at 17.) *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir. 2015) (taking into consideration "the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work) … "). The quality of Class Counsel's work is further evidenced by the favorable settlement achieved. Accordingly, the Court finds that this factor weighs in favor of an upward departure.

### D.     Contingent Nature of the Fee

Finally, Class Counsel took this case on a contingent basis, incurring a total of $1,165,096.10 in out of pocket expenses and billing nearly 8,600 collective hours. (Fee Mem. at 18, 23.) Class Counsel have received no compensation for their efforts during the course of litigation, and they undertook representation despite substantial risk that none of their expenses on behalf of the Class would be recouped. (Katriel Decl. ¶ 7.) "Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorney's normal hourly rates." *Monterrubio*, 291 F.R.D. at 457 (citing *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994)). This is especially true where, as here, the litigation extended over many years and entailed a significant financial burden. *See Vizcaino*, 290 F.3d at 1050. Accordingly, this factor weighs in favor of an upward departure.

### E.     Lodestar Cross-Check

To determine the reasonableness of a fee award, courts may compare the percentage of the common fund with the counsel's lodestar calculations. *Vizcaino*, 290 F.3d at 1050–51. As noted above, Class Counsel assert that they spent a total of roughly 8,590 hours litigating this case. (Fee Mem. at 22; Katriel Decl. ¶ 8; Ex. 2 to Kalfayan

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:15-cv-00307-JLS-JCG                                               Date: August 27, 2018
Title:  Adel Tawfilis, et al. v. Allergan, Inc.

Decl., Doc. 391-10.)  Roy Katriel and Ralph Kalfayan, who were lead litigation counsel and are partners at their respective firms, billed at $825 and $650 per hour, respectively. Associates from the Krause, Kalfayan, Benink & Slavens firm billed at rates between $300 and $600 per hour, and non-attorney staff for each firm billed at rates between $195 and $225.  Using the above figures, Class Counsel calculated a lodestar of $4,917,978.50. (*Id*.)

       The lodestar cross-check first requires the Court to determine whether the hourly rates sought by counsel are reasonable.  "[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  This determination "is not made by reference to rates actually charged [by] the prevailing party."  *Id*.  The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Camacho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (citation omitted).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp*., 896 F.2d 403, 407 (9th Cir. 1990).  The Court is satisfied that Class Counsel's rates as stated above are reasonable in light of Class Counsel's experience, exceptional work, and the complex nature of antitrust law.  *See In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *8 (N.D. Cal. Dec. 6, 2017) (finding hourly rates between $835 and $1035 for partners and $295 to $635 for associates reasonable in a complex antitrust matter).

       The Court next determines whether Class Counsel's expenditure of 8,600 hours was generally reasonable.  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.")  Class Counsel submitted both summaries of the number of hours expended by attorneys and staff on particular types of tasks, as well as itemized billing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG            Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

records setting forth the time spent on particular tasks.[3] (*See* Exs. 1, 2 to Kalfayan Suppl. Decl., Docs. 394-1, 394-2; Katriel Suppl. Decl., Doc. 395; Ex. 1 to Katriel Decl., Doc. 395-1.) The majority of hours billed were spent reading and reviewing documents and expert reports, drafting pleadings and briefs, and taking and defending depositions. (*See, e.g.* Ex. 1 to Kalfayan Suppl. Decl.) These hours were reasonable and necessary in light of the hundreds of thousands of pages produced in discovery, 25 expert reports traded between the parties, the extensive motion practice (and accompanying applications to seal) as outline above, and the 28 depositions taken over the course of the litigation. *Cf. In re Asacol Antitrust Litigation*, No. 1:15-cv-1273 (D. Mass.), ECF No. 485, 648 (approving 33.3% fee award where counsel spent more than 15,000 hours prosecuting a pharmaceutical antitrust case prior to class certification and summary judgment).

    The requested fees of $4,482,885.00 represent a negative multiplier of 0.91 of Class Counsel's lodestar. Thus, considering all the circumstances of this case and the quality of the representation, the lodestar comparison supports the reasonableness of the requested fee award. *McDonald v. Airport Terminal Servs., Inc.*, No. EDCV 11-1946-VAP (SPX), 2013 WL 12251409, at *10 (C.D. Cal. Nov. 19, 2013) (approving a fee request for 33% of the settlement fund where the amount of attorneys' fees incurred exceeded the award).

    In light of the Court's consideration of the relevant factors set forth by the Ninth Circuit as well as the lodestar cross-check, the Court finds that an award of 33.33% of the Settlement Fund is appropriate and reasonable in this action. Accordingly, the Court awards attorneys' fees of $4,482,885.00.

## V.     LITIGATION COSTS

---

[3] Class Counsel initially submitted only conclusory assertions of the hours worked by each attorney, so the Court required Class Counsel to file supplemental summaries and/or billing records. (*See* Order for Supplemental Billing Records, Doc. 393.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG                    Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

    Plaintiffs request that the Court approve the reimbursement of $1,101,193.10[4] in litigation expenses and costs. (Fee Mem. at 24.) "Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048. Class Counsel have documented their expenses incurred in court filing fees, depositions, travel, expert fees, and mediation fees. (*See* Katriel Decl. ¶ 10, Exs. 1–6 to Katriel Decl., Docs. 391-2–391-7; Kalfayan Decl. ¶ 7; Exs. 3–12 to Kalfayan Decl., Docs. 391-11–391-20.) The majority of the expenses went to the retention of expert witnesses, who were particularly crucial in securing class certification. (Kalfayan Decl. ¶ 7.) The Court finds the various expenses adequately documented and reasonable.

    Accordingly, the Court GRANTS Plaintiffs' request for litigation costs of $1,101,193.10.

## VI.    <u>CLASS REPRESENTATIVE SERVICE AWARDS</u>

    Drs. Tawfilis and Towhidian each seek an incentive award of $5,000 for their time spent as Class Representatives. (Fee Mem. at 25.) Incentive awards are "discretionary … and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59 (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000)). "To [further] assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Monterrubio*, 291 F.R.D. at 462 (quoting *Staton*, 327 F.3d at 977). Courts "must 'evaluate [such] awards individually' to detect 'excessive payments to named class

---

[4] This amount does not include the $63,903.00 in reimbursement of administration costs as addressed *supra* in Section III.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.:  8:15-cv-00307-JLS-JCG                                                    Date: August 27, 2018
Title:  Adel Tawfilis, et al. v. Allergan, Inc.

members' that may indicate 'the agreement was reached through fraud or collusion.'" *Id.* (quoting *Staton*, 327 F.3d at 975, 977).

Here, Class Counsel attests that Plaintiffs devoted significant time and effort to this litigation and that their contributions proved "invaluable" in achieving the Settlement. (Kalfayan Decl. ¶ 9.)  Both Plaintiffs sat for day-long depositions, spent significant time preparing for those depositions, and met extensively with Class Counsel to conduct document searches in order to respond to Allergan's written discovery requests. (*Id.* ¶¶ 9–10.)  Dr. Towhidian specifically was called upon to provide extensive documents that were the focus of a discovery hearing, which required a particularly significant time investment to ensure that documents were appropriately safeguarded and redacted. (*Id.* ¶ 10.)  The Court therefore finds that incentive awards are appropriate under the circumstances.  Moreover, the requested payments are reasonable.  Each payment represents less than .04% of the Settlement Fund, and Plaintiffs expended significant effort in assisting with the prosecution of this litigation. *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 471 (C.D. Cal. 2014) (approving incentive awards of $5,000 per plaintiff where the plaintiffs were subjected to intrusive discovery, communicated with class counsel over a period of several years, and participated significantly in finalizing the settlement terms); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving incentive payments comprising 0.45% of the total settlement amount).

Accordingly, Drs. Tawfilis and Towhidian are each awarded an incentive payment of $5,000.

## VII.  CONCLUSION

The Court finds the Settlement to be fair, adequate, and reasonable, and accordingly GRANTS the Motion for Final Approval of the Class Action Settlement. The Court also GRANTS Plaintiffs' Motion for Attorneys' Fees, Costs, and Class Representative Incentive Payments.  The Court awards Class Counsel $4,482,885.00 in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.: 8:15-cv-00307-JLS-JCG            Date: August 27, 2018
Title: Adel Tawfilis, et al. v. Allergan, Inc.

attorneys' fees, based on an award of 1/3 of the Settlement Fund and $1,101,193.10 in litigation costs. The Court also awards a Class Representative incentive payment of $5,000 each to Drs. Tawfilis and Towhidian. Finally, the Court awards Class Counsel $63,903.00 in reimbursement for the costs of settlement administration. Distribution of the Settlement Fund to the Class shall be made in accordance with the method outlined in the Settlement.

       Class Counsel is ordered to file a proposed final judgment within **five (5) days** of entry of this Order.

Initials of Preparer: tg